1  **LINDEMANN LAW FIRM, APC**
   BLAKE J. LINDEMANN, SBN 255747
2  DONNA R. DISHBAK, SBN 259311
   433 N. Camden Drive, 4th Floor
3  Beverly Hills, CA 90210
   Telephone:   (310) 279-5269
4  Facsimile:   (310) 300-0267
   E-Mail:       blake@lawbl.com
5

6  *Attorneys for Plaintiff and the Proposed Classes*

7                    **UNITED STATES DISTRICT COURT**

8                   **NORTHERN DISTRICT OF CALIFORNIA**

9

10

11  ARNOLD NAVARRO, on behalf of himself        Case No. 3:22-cv-00095-WHO
    and all others similarly situated,
12                                              Judge: Hon. William H. Orrick

13

14                          Plaintiff,          **PLAINTIFF'S OPPOSITION TO**
                                                **DEFENDANTS' MOTION TO COMPEL**
    v.                                          **ARBITRATION**
15

16  SMILEDIRECTCLUB, INC.;                      [Declarations of Arnold Navarro and Blake
    SMILEDIRECTCLUB, LLC, and JEFFREY           J. Lindemann In Support of Opposition
17  SULITZER; DOES 1–10,                        Thereto]

18

19                          Defendants.         Date:         March 30, 2022
                                                Time:         2:00 p.m.
20                                              Courtroom:    2, 17th Floor
                                                Judge:        Hon. William H. Orrick
21

22                                              Date Removed: January 6, 2022

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   RELEVANT FACTUAL ALLEGATIONS ..........................................................2

    A.   Defendants' Medical Services Caused Injury to Plaintiff Navarro and putative Class
    Members. .....................................................................................................................2

    B.   The Oppressive Terms in the Form are Not Conspicuous and Do Not Give
    Reasonable Notice to the Ordinary User. ...................................................................2

III.  STATEMENT OF ISSUES TO BE DECIDED .....................................................3

IV.   THE DEFENDANTS HAVE NOT MET THEIR BURDEN TO COMPEL

    ARBITRATION ....................................................................................................3

V.    THE DISPUTE IN THIS MOTION CANNOT BE DELEGATED TO AN

    ARBITRATOR ......................................................................................................3

    A. The Arbitration Form Lacks any Delegation or Jurisdictional Provision ......................4

    B.   Even if the Form Contained a Delegation Provision, Delegation Is Inoperative as to
    Plaintiff's Contention that the Form Was Not Formed Pursuant to *CCP § 1295* .........6

VI.   THE PURPORTED ARBITRATION FORM FAILS FOR LACK OF ASSENT ................7

VII.  THE PURPORTED ARBITRATION FORM FAILS FOR LACK OF COMPLIANCE

    WITH *CCP § 1295* .............................................................................................8

    A. Defendants Do Not Dispute that the Arbitration Form does not comply with *CCP §
    1295* ..........................................................................................................................9

    B.   The FAA Does Not Preempt *CCP § 1295* ................................................................10

    C.   *CCP § 1295 Applies to Defendants* ..........................................................................12

    D.   *CCP § 1295 is not a safe harbor provision* ...............................................................13

VIII. THE PURPORTED ARBITRATION FORM FAILS UNDER THE *MCGILL* RULE .....14

IX.   THE FORM IS UNCONSCIONABLE ..............................................................16

    A.   The Form is Procedurally Unconscionable ..............................................................16

    B.   The Form is Substantively Unconscionable ..............................................................17

       1.   Requiring one party to arbitrate, but not the other is unconscionable. ................17

       2.   The Form Does Not Even Suggest any Agreement until Page 8 ..........................17

       3.   The Expense of Arbitration Dwarfs Plaintiff's Individual Claims ......................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      C.   The Unconscionable Terms Should Not Be Severed ...................................................18

X.   EVIDENTIARY OBJECTIONS .......................................................................................19

XI.  CONCLUSION ...............................................................................................................20

1

## TABLE OF AUTHORITIES

**Cases**

2

3

*Ali v. J.P. Morgan Chase Bank, N.A.,*
  No. 14-15076, 2016 WL 1380922, at *1 (9th Cir. Apr. 7, 2016) ...........................16

4

5

*Am Express Co. v. Italian Colors Rest.,*
  470 U.S. 228, 236 (2013) .................................................................15

6

*Am. Triticale, Inc. v. Nytco Servs., Inc.,*
  664 F.2d 1136, 1143 (9th Cir. 1981 ..................................................9

7

8

*Armendariz v. Foundation Health Psychcare Services, Inc.*
  (Cal. 2000), 6 P.3d 669, 693 ...........................................................17

9

10

*Attia v. Neiman Marcus Group,*
  Case No. 8:16-cv-00504 (C.D. Cal. June 27, 2016) ..................................16

11

*Aviles v. Quick Pick Express, LLC,*
  Case No. CV-15-5214-MWF, 2015 WL 9810998, at *7 (C.D. Cal. Dec. 3, 2015) ...............16

12

13

*Barraza v. Cricket Wireless LLC,*
  No. C 15-02471 WHA, 2015 WL 6689396, at *6 (N.D. Cal. Nov. 3, 2015) ........................20

14

15

*Blair v. Rent-A-Ctr., Inc.,*
  928 F.3d 819 (9th Cir. 2019) ...........................................................14

16

*Blair v. Scott Specialty Gases,*
  283 F.3d 595, 609 (3d Cir. 2002) ......................................................19

17

18

*Block v. City of Los Angeles,*
  253 F.3d 410, 418-19 (9th Cir. 2001) ...................................................3

19

20

*Brennan v. Opus Bank,*
  796 F.3d 1125, 1132 (9th Cir. 2015) ....................................................5

21

*Bridges Fund v. Fastbucks Franchise Corp.,*
  622 F.3d 996, 1004 (9th Cir. 2010) ..............................................16, 18

22

23

*Brown v. Kaiser Found. Health Plan, Inc.,*
  No. E069356, 2019 WL 2539179, at *4 (Cal. Ct. App. June 20, 2019 ..................10

24

25

*Burks v. Kaiser Found. Health Plan, Inc.,*
  160 Cal. App. 4th 1021 (Cal. App. 3d Dist. 2008) ......................................9

26

*Campos v. Campos Family Farms, LLC,*
  No. 12-598-LJO, 2012 WL 2090303, at *8 (E.D. Cal. June 8, 2012) ......................6

27

28

*Cf. Hunter v. Kaiser Foundation Health Plan,*
  434 F. Supp. 3d 764, 772 (N.D. Cal. 2020 ..............................................10

*CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Georgia, LLC*,
    8 F.4th 1007 (9th Cir. 2021)........................................................................................11

*Comb v. PayPal*,
    218 F. Supp. 2d 1165 (N.D. Ca. 2002) ......................................................................17

*Comer v. Micor, Inc.*,
    436 F.3d 1098, 1104 n.11 (9th Cir. 2006) ....................................................................6

*Compare Eiess v. USAA Fed. Sav. Bank*,
    404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019)..............................................................6

*Concat LP v. Unilever, PLC*,
    350 F.Supp.2d 796, 804 (N.D. Cal. 2004) ....................................................................3

*Cordas v. Uber Techs. Inc.*,
    228 F. Supp. 985, 992, fn. 1 (N.D. Cal. 2017) .............................................................4

*Covenant Care, Inc. v. Super. Ct.*
    (2004) 32 Cal.4th 771, 785 .........................................................................................13

*Dinong v. Superior Court*,
    102 Cal. App. 3d 845, 849 (Cal. Ct. App. 1980) ........................................................14

*Dugan v. R.J. Corman R.R. Co.*,
    344 F.3d 662, 669 (7th Cir. 2003) ..............................................................................19

*Fardig v. Hobby Lobby Stores, Inc.*,
    2014 U.S. Dist. LEXIS 87284, at *10 (C.D. Cal. June 13, 2014) ...........................16

*Ferguson v. Corinthian Colleges, Inc.*,
    733 F.3d 928, 930 (9th Cir. 2013) ..............................................................................14

*Ferguson v. Countrywide Credit Industries, Inc.*,
    298 F.3d 778, 788 (9th Cir. 2002) ..............................................................................18

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938, 944 (1995) ..........................................................................................5, 6

*Flores v. Presbyterian Intercommunity Hospital*
    (2016) 63 Cal.4th 75 ...................................................................................................13

*Fraser v. Goodale*,
    342 F.3d 1032, 1036-37 (9th Cir. 2003) ......................................................................3

*Friedman v. Guthy-Renker LLC*,
    Case No. 2:14-cv-06009-ODW, 2015 WL 857800, at *3 (C.D. Cal. Feb. 27, 2015) ...............7

*Front. Oil Corp. v. RLI Ins. Co.*,
    2007 Cal. App. LEXIS 1298 (2d Dist. August 6, 2007)............................................16

*GIB, LLC v. Salon Ware, Inc.*,
    634 F. App'x 610, 611 (9th Cir. 2016) ...................................................20

*Granite Rock Co. v. Int'l Bd. of Teamsters*,
    130 S. Ct. 2847, 2859–60 (2010) ..............................................4, 6

*Great Nor. Ry. Co. v. Sup. Ct.*
    (1970) 12 Cal.App.3d 105, 113 ...............................................16

*Gutierrez de Martinez v. Lamagno*,
    515 U.S. 417, 434 n.9 (1995) ................................................10

*Henderson v. Super. Ct.*,
    142 Cal. Rptr. 478 (Cal. Ct. App. 1978) ...................................16

*Humana Inc. v. Forsyth*,
    525 U.S. 299, 307, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) ...............11

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
    817 F.2d 75, 77-78 (9th Cir. 1987) .........................................10

*Hunter* and *Brown*, of *Scott v. Yoho*,
    248 Cal. App. 4th 392, 407 (Cal. Ct. App. 2016) ..........................10

*Imbler v. PacifiCare of Cal., Inc.*
    (2002) 103 Cal.App.4th 567, 571-573 (*Imbler*) ..........................11

*Ingle v. Circuit City Stores*,
    328 F.3d 1165, 1180 (9th Cir. 2003) .......................................18

*Interstate Circuit, Inc. v. United States*
    306 U.S. 208, 226 (1939) ...................................................19

*Ionescu v. Extra Space Storage Inc.*,
    19-CV-02226-YGR, 2019 WL 3997480, at *4 (N.D. Cal. Aug. 23, 2019) ......15

*J.B.B Investments Partners, LTD v. Fair*,
    232 Cal. App. 4th 974 (2014) ...............................................7

*Jurado v. Schutz 655, LLC*,
    2017 WL 600076, *5 (C.D. Cal. Feb. 13, 2017) .............................3

*Kindred Nursing Limited Partnership v. Clark*,
    137 S. Ct. 1421, 1423 (2017) ..............................................12

*Little v. Auto Stiegler, Inc.*,
    63 P.3d 979, 984 (Cal. 2003) ..............................................17

*Los Angeles News Service v. CBS Broadcasting, Inc.*,
    305 F.3d 924, 935-36 (9th Cir. 2002) ......................................19

*Lucas v. Hertz Corp.*,
    875 F.Supp.2d 991, 998 (N.D. Cal. 2012) ....................................................................7

*Malek v. Blue Cross of California*,
    121 Cal. App. 4th 44, 71-72 (Cal. Ct. App. 4th Dist. 2004) ......................................9

*McCarthy v. Providential Corp.*,
    No. C 94-0627, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994)...........................3

*McGhee v. North American Bancard*,
    2017 WL 3118799 (S.D. Cal. 2017) ...........................................................................7

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945 (Cal. 2017) ...................................................................................1, 14

*McKee v. Audible, Inc.*,
    No. CV 17-1941-GW(EX), 2017 WL 4685039, at *8 (C.D. Cal. July 17, 2017) ....7

*McLellan v. Fitbit, Inc.*,
    No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) ..........6

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257, 1293 (9th Cir. 2006) .......................................................................18

*Ojo v. Farmers Grp., Inc.*,
    600 F.3d 1205, 1208–09 (9th Cir. 2010) .................................................................11

*Perez v. DIRECTV Group Holdings, L.L.C.*,
    No. 8:16–cv–1440–JLS–DFMx, 2017 WL 1836357 (C.D. May 1, 2017) ..............18

*Pokorny v. Quixtar, Inc.*
    601 F.3d 1987, 1004 (9th Cir. 2010) .......................................................................16

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251, 1272 (9th Cir. 2017) .......................................................................18

*Railroad Management Co., L.L.C. v. CFS Louisiana Midstream Co.*,
    428 F.3d 214, 219, fn. 2 (5th Cir. 2005) ..................................................................19

*Rent-A-Center, West, Inc. v. Jackson*,
    130 S. Ct. 2772, 177 L.Ed.2d 403 (2010)..................................................................4

*Rodriguez v. Superior Court*,
    176 Cal. App. 4th 1461, 1470 (2009) ................................................................10, 14

*Rosenfield v. Superior Court*
    (1983) 143 Cal. App.3d 198, 200 ........................................................................9, 13

*Rui Chen v. Premier Financial Alliance, Inc.*,
    No. 18-CV-3771 (YGR), 2019 WL 280944, at *1 n. 3 (N.D. Cal. Jan. 22, 2019)....8

*Sanford v. MemberWorks, Inc.*,
   483 F.3d 956, 962 (9th Cir. 2007) ............................................................... 5, 20

*Scudder v. Union Nat. Bank of Chicago*,
   91 U.S. 406, (1875) ................................................................................... 16

*Smith v. PacifiCare Behavioral Health of Cal., Inc.*
   (2001) 93 Cal.App.4th 139, 152-162 .......................................................... 12

*Tompkins v. 23andMe, Inc.*,
   No. 5:13-CV-05682-LHK, 2014 WL 2903753, at *17 (N.D. Cal. June 25, 2014) .................. 5

*United States Dep't of Treasury v. Fabe*,
   508 U.S. 491, 507-08 (1993) ...................................................................... 11

*Wheeler v. St. Joseph Hospital*
   (1976) 63 Cal. App.3d 345, 361, fn. 11 ......................................................... 9

**Statutes**

15 U.S.C. § 1011 ....................................................................................... 10, 11

15 U.S.C. § 1012(b) ..................................................................................... 11

15 U.S.C. § 7006(5) ...................................................................................... 7

28 U.S.C. § 1914 ......................................................................................... 17

9 U.S.C. § 4 .............................................................................................. 20

Cal. Civ. Code § 1670.5(a) ............................................................................... 18

*CCP § 1295 (b)* .......................................................................................... 1

*CCP § 1295(a)* ........................................................................................... 1

*CCP § 1295(b)* ........................................................................................... 6

*CCP § 1295(c)* ........................................................................................... 7

*CCP § 1363.1* ........................................................................................... 10

Civil Code § 1633.1 *et seq* ............................................................................. 7

**Other Authorities**

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 114 (2012) ......... 10

Electronic Signatures in Global and National Commerce Act ("ESIGN") codified at 15 U.S.C. § 7001, *et seq* ................................................................................. 7

Stats. 1975, Second Ex. Sess. 1975-1976, ch. 1, § 26.6, pp. 3975-3976 ................................ 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Uniform Electronic Transactions Act ("UETA") ..................................................................7

**Rules**

Civil L.R. 7-3(a) ................................................................................................................19

Fed. R. Civ. P. 56(c)(2) ......................................................................................................3

Federal Rule of Evidence 1002 ...........................................................................................8

Federal Rules of Civil Procedure 56...................................................................................3

I.      **INTRODUCTION**

Defendants' request to arbitrate the claims at issue in this case, fails for four reasons.  *First*, Defendants have failed to meet their burden that Mr. Navarro assented to an electronic arbitration agreement in accordance with *Nguyen v. Barnes & Noble, Inc.*, 76 F.3d 1171, 1173 (9th Cir. 2014). Defendants did not present the design of the enrolling website from which Plaintiff and other patients enrolled, but instead vaguely refer to a cropped image of a click box in the declaration attached to the Motion. This is insufficient evidence to establish constructive assent for a clickwrap arbitration agreement in accordance with *Nguyen*.

*Second*, the form submitted to this Court by the Defendants as the arbitration agreement (Dkt. 20-1) "Form" failed to include requisite disclosures, a signature, and other notices as required by *CCP § 1295(a)* and *(b)*.  Authority is clear that these requirements are not preempted by the Federal Arbitration Act.  Defendants' contention that they should not be considered "health care providers" is contradicted by their own documents that refer to Plaintiff as a "patient" and the case law interpreting the definition. These issues are not delegated to the arbitrator because there is no delegation clause in the Form, and delegation would not apply to these issues reserved for the Court as a matter of law. Defendants' failure to comply with *CCP § 1295(a)* and *(b)* renders their claim for arbitration to be wholly unenforceable.

*Third*, the Form only permits Plaintiff to pursue "damages" and by implication, Plaintiff may seek no other remedies.  Thus, the Form is in violation of the rule in *McGill v. Citibank, N.A.* (2017) 2 Cal. 5th 945.  Moreover, Defendants have not demonstrated that public injunctive is available in arbitration based on the rules of AAA or any judicial decision confirming any such award.

*Finally*, the Form is both procedurally and substantively unconscionable because the Form is not labeled an agreement, it does not suggest the wording of an agreement of any kind until page nine, there are other "terms and conditions" the parties entered into that do not reference a patient's requirement to arbitrate, the arbitration remedy is non-mutual because Defendants may pursue their claims outside of arbitration, and other reasons as more fully set forth below.  The Motion should be denied.

II.      **RELEVANT FACTUAL ALLEGATIONS**

    **A. Defendants' Medical Services Caused Injury to Plaintiff Navarro and putative Class Members.**

Defendants are engaged in an enterprise that constitutes the unauthorized practice of dentistry. Original Class Action Complaint ("Compl."), ¶ 1. The Defendants failed to conduct an initial exam of Plaintiff and class members' mouths, gums, roots before a diagnosis and treatment plan is discussed with the patient, and prior to fitting patients for aligners. The imprecision and danger to patients is apparently what has caused Invisalign to discontinue the use of a mold fitting process, and instead caused Invisalign to use laser scans authorized by licensed medical professionals. There is an accusation against the Chief Clinical Officer of the corporate defendants, Jeffrey Sulitzer, that he and Defendants have been engaged in the unauthorized practice of dentistry. Lindemann Decl., **Ex. 1**, **Ex. 2**, **Ex. 3**.

Mr. Navarro was harmed by Defendants' conduct, which included without limitation, making false representations about the quality of services to be performed, and misleading and violating consumer protection laws of California. Mr. Navarro has sustained issues with his bite, the placement of his teeth, and has sustained significant pain and injury based on Defendants' services. Mr. Navarro has reviewed the declaration in support of the Motion to compel arbitration and the exhibits. Notably, he has a different "terms and conditions" in his records that does not make any reference to arbitration. Declaration of Arnold Navarro ("Navarro Decl."), ¶ 6, **Ex. 4**.

    **B. The Oppressive Terms in the Form are Not Conspicuous and Do Not Give Reasonable Notice to the Ordinary User.**

There is no suggestion of any "agreement" or "contract" in the Form, until page 9. Dkt. No. 20-1. This is insufficient to create an agreement to arbitrate and is contrary to how nearly every legitimate company presents an arbitration contract. In fact, the Form is labeled as an informational and in fact provides information in page 1 through 8. The word "agreement" does not appear until page 9. This is insufficient to suggest any agreement to arbitrate, and is at minimum, misleading.

Moreover, Defendants have failed to produce the design of the alleged website in place to permit assent through a clickwrap agreement in accordance with Ninth Circuit Law. Finally, the Form

lacks the mandatory disclosures and requirements that all medical service providers must include to enter into an arbitration agreement.

III.   **STATEMENT OF ISSUES TO BE DECIDED**

1.   Was the purported Form assented to based on the design of the enrolling website pursuant to *Nguyen v. Barnes & Noble, Inc.*, 76 F.3d 1171, 1173 (9th Cir. 2014).

2.   Does *CCP § 1295* require the Motion to be denied.

3.   Does the purported Form contain a delegation provision.

4.   Even if the claims were within the scope of any delegation provision, is delegation inoperative based on the contentions and lack of any formation pursuant to *CCP § 1295*.

5.   Does the *McGill* Rule require the Motion to be denied.

6.   Is the purported Form, or the delegation provision, unconscionable.

IV.   **THE DEFENDANTS HAVE NOT MET THEIR BURDEN TO COMPEL ARBITRATION**

On a Motion to Compel Arbitration, the Court applies a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (*citing McCarthy v. Providential Corp.*, No. C 94-0627, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994); *Jurado v. Schutz 655, LLC*, 2017 WL 600076, *5 (C.D. Cal. Feb. 13, 2017). Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (*quoting Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted).

V.   **THE DISPUTE IN THIS MOTION CANNOT BE DELEGATED TO AN ARBITRATOR**

As set forth herein, the District Court must hear the challenges to arbitration because the Form lacks a delegation or jurisdictional provision referring such dispute, the Form is vague about what

version of the rules of AAA would apply to any such arbitration, delegation is unavailable as to whether a contract was formed in accordance with California law, and in the alternative, delegation does not apply to this consumer dispute.  As set forth more fully below, Plaintiff contends that the delegation clause is unenforceable.

### A. The Arbitration Form Lacks any Delegation or Jurisdictional Provision

"It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. Int'l Bd. of Teamsters*, 130 S. Ct. 2847, 2855 (2010). Defendants first contend that arbitrability was delegated to the arbitrator and should be decided by a later appointed arbitrator as opposed to this Court.  Mot. 11.  However, Defendants have failed to meet their burden that the arbitration Form includes a valid delegation clause, or more simply, that delegation was an issue to be submitted for arbitration.  The delegation clauses in all of Defendants' cited authority were broad. "The agreement provided for arbitration of all 'past, present or future' disputes arising out of Jackson's employment with Rent-A-Center, including 'claims for discrimination' and 'claims for violation of any federal ... law.' It also provided that '[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement including, but not limited to any claim that all or any part of this agreement is void or voidable.'" *Rent-A-Center, West, Inc. v. Jackson,* 130 S. Ct. 2772, 177 L.Ed.2d 403 (2010). Decisions from this District that Defendants cited to similarly included a underline broad delegation provision. *Cordas v. Uber Techs. Inc.*, 228 F. Supp. 3d 985, 992, fn. 1 (N.D. Cal. 2017), J. Seeborg ("You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, "Disputes") will be settled by binding arbitration between you and Uber.").

Here on the other hand, there is no delegation or jurisdictional provisions in the Form.  The Form here does not apply to all claims, disputes or controversies, but only contemplates referral of "any dispute ***regarding the products and services offered*** through SmileDirectClub…"  Defendants' Ex. 1, at 7-8 (emphasis added).  There is no reference to an arbitrator's authority to decide all claims broadly, nor any suggestion that the arbitrator can decide anything other than a dispute regarding the

products and services.  For this reason alone, the delegation provision is unenforceable under Supreme Court and Ninth Circuit authority. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (in a rare unanimous decision denying referral of arbitrability to the arbitrator, Justice Breyer wrote "[a]nd, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power.").  The Defendants suggest that the mere incorporation of the "AAA rules" could rectify this clear failure. There are two problems with that argument.

*First*, a court may only enforce an arbitration Form regarding arbitrability "that clearly  and unmistakably delegates arbitrability questions to the arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015).   A litigant can directly challenge the assertion of a "delegation provision" directly, *Id.* at 1132, which is precisely what Plaintiff is doing here.  As stated above, this Form lacks a delegation provision that existed in *Jackson*, *Kaplan*, and *Brennan* because the Form only refers to claims "regarding the products and services" and does not broadly delegate any and all claims to arbitration.  *See also Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("It is axiomatic that '[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit.'").  The parties did not agree to submit the dispute of arbitrability to arbitration.

*Second*, and independently, the Form does not clearly and unmistakably refer to any particular version of the Rules of AAA and reveals further ambiguities and deficiencies. Navarro Decl. ¶ 3. Defendants' reference to the commercial rules of AAA in their brief is improper because there is no suggestion or reference in the Form that the "commercial" version of the AAA Rules would apply. *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903753, at *17 (N.D. Cal. June 25, 2014) ("…in the instant case, there are at least two ambiguities in the arbitration provision's reference to the AAA rules: lack of identification of specific AAA rules, and uncertainty as to whether the Consumer Rules apply in addition to the Commercial Rules").  The introduction to the Commercial AAA Rules provides that "parties can provide for arbitration of future disputes by inserting the following clause in their contracts:  Any controversy or claim arising out of or relating to this contract,

or the breach thereof, shall be settled by arbitration … by the AAA under its Commercial Arbitration Rules." AAA Commercial Rules, Introduction.[1]  Of course, the Form could have easily contained such a clause if Defendants intended no ambiguity, but they failed to do so.  The failure to include a broad delegation provision renders the demands for delegation that Defendants have made to be ambiguous, and thus, delegation is inoperative.

**B. Even if the Form Contained a Delegation Provision, Delegation Is Inoperative as to Plaintiff's Contention that the Form Was Not Formed Pursuant to *CCP § 1295***

"It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bd. of Teamsters*, 130 S. Ct. 2847, 2855-56 (2010). "[T]he federal policy favoring arbitration is inapplicable to the determination of whether a valid agreement to arbitrate between the parties exists." *Campos v. Campos Family Farms, LLC*, No. 12-598-LJO, 2012 WL 2090303, at *8 (E.D. Cal. June 8, 2012) (*citing Comer v. Micor, Inc*., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)). Rather, that determination is made by reference to ordinary state law contract principles. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("[t]he relevant state law here, for example, would require the court to see whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration."). In this Circuit, both parties must assent to the contract under applicable state law. *Nguyen v. Barnes & Noble, Inc.*, 76 F.3d 1171, 1173 (9th Cir. 2014).

Here, California law has specific formation requirements that were not met, so no contract was ever formed. Pursuant to *CCP § 1295(b)*, a specific notice must be placed "immediately before the

---

[1] Even if a delegation clause had been included by the drafter, Smile Direct Club, this dispute brought by Plaintiff as an unsophisticated party (Navarro Decl. ¶ 7), should not be compelled to arbitration. Contrary to Defendants' argument, since *Brennan*, courts have been split on this issue as to whether a delegation clause pertaining to an unsophisticated party is enforceable. *Compare Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) ("However, the majority of the lower courts in the Ninth Circuit have 'held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party.'") *compare with McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) ("The 'greater weight of authority has concluded that the holding of *Opus Bank* applies similarly to nonsophisticated parties.'").  Plaintiff agrees with the decisions that have concluded delegation would not be allowed under these circumstances, as an alternative to the deficiencies highlighted regarding the delegation clause directly.

1  ***signature line***…" (emphasis added). "Once ***signed***, such a contract governs all subsequent open-

2  book account transactions for medical services…" *CCP § 1295(c)* (emphasis added). Defendants

3  have not established any arbitration agreement that was signed,[2] with a "signature line" by Plaintiff or

4  any of the putative class representatives. Since the state law issue goes to whether a contract was

5  formed under California law, it must be decided by the Court and cannot be delegated to the arbitrator

6  as a matter of law.

7  VI.    **THE PURPORTED ARBITRATION FORM FAILS FOR LACK OF ASSENT**

8          The Defendants bear the burden of proving by a preponderance of the evidence the existence

9  of a valid arbitration agreement. *See Lucas v. Hertz Corp.*, 875 F.Supp.2d 991, 998 (N.D. Cal. 2012).

10  Because there is no evidence offered of the sign-up process suggesting adequate notice of the

11  agreement, law in this Circuit requires that the Motion to compel arbitration be denied. *Nguyen v.*

12  *Barnes & Noble, Inc.*, 76 F.3d 1171, 1173 (9th Cir. 2014); *Friedman v. Guthy-Renker LLC*, Case No.

13  2:14-cv-06009-ODW, 2015 WL 857800, at *3 (C.D. Cal. Feb. 27, 2015) (denying motion to compel

14  arbitration based on the design of the website and the lack of any temporal and spatial reference to the

15  policies being agreed to by the consumer); *McGhee v. North American Bancard*, 2017 WL 3118799

16  (S.D. Cal. 2017); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017 WL 4685039, at *8 (C.D.

17  Cal. July 17, 2017).

18

19

20          [2] Alternatively, the requirements for an electronic signature were not satisfied. Congress enacted the Electronic

21  Signatures in Global and National Commerce Act ("ESIGN") codified at 15 U.S.C. § 7001, *et seq.* that governs whether
electronic signatures are enforceable. An "electronic signature" is only valid in place of a wet signature under ESIGN if
the individual provides "an electronic sound, symbol, or process, attached to or logically associated with a contract or other

22  record and ***executed or adopted by a person with the intent to sign the record***." 15 U.S.C. § 7006(5) (emphasis added).
California Law similarly defines a valid electronic signature pursuant to the Uniform Electronic Transactions Act

23  ("UETA"). Civil Code § 1633.1 *et seq.*

24          In evaluating the presence or absence of an electronic signature, one California Court of appeal case has stated
that a person must do more than "print their name" at the end of a document to render the electronic signature valid. *J.B.B*

25  *Investments Partners, LTD v. Fair*, 232 Cal. App. 4th 974 (2014). The California Court of Appeal cited to the California
form jury instructions on this point, CACI No. 380, which provide that a "party suing to enforce an agreement formalized

26  by electronic means must prove based on the context and surrounding circumstances, including the conduct of the parties,
that the parties agreed to use [e.g., e-mail] to formalize their Form." The Court in *J.B.B Investments* also noticed the

27  absence of a separate contract authorizing an e-signature, which while not dispositive, was an important factor in finding
the e-signature invalid. There has been no demonstration by Defendants that any of the above has accomplished.

28

In a case we are involved in, Judge Gonzales Rogers denied a motion to compel for a similar failure. Federal Rule of Evidence 1002 provides that "[a]n original writing is required in order to prove its content unless these rules or a federal statute provide otherwise." *See Rui Chen v. Premier Financial Alliance, Inc.*, No. 18-CV-3771 (YGR), 2019 WL 280944, at *1 n. 3 (N.D. Cal. Jan. 22, 2019) (finding that declaration of defendant's attorney describing online arbitration Form was precluded by the best evidence rule and denying motion to compel arbitration under *Nguyen*).

The Skinner Decl. asserts, without any supporting evidence including the design of the page surround such alleged click wrap, that "Customers manifest agreement by affirmatively clicking a clickwrap box ***like the following***." Skinner Decl. ¶ 14 (emphasis added). "Like the following" is not sufficient evidence of what the site looks like to the consumer in order to determine if proper assent has been given in accordance with *Nguyen*, and thus, Defendants have not established an agreement to arbitration. The surrounding view of what is agreed to, and the page design was also required to be included. Like the above authority, there is no factual evidence to suggest that the sign-up process here includes constructive assent by patients to the terms and conditions purportedly embodied in the Form. Mr. Navarro has never provided electronic assent to arbitration. Navarro Decl. ¶ 5. Moreover, the only "terms and conditions" Mr. Navarro has in his possession, make no reference to any arbitration provision. Navarro Decl., **Ex. 4**. Finally, as addressed above, such a formation question is to be decided by the Court, and not the arbitrator.

## VII.   **THE PURPORTED ARBITRATION FORM FAILS FOR LACK OF COMPLIANCE WITH *CCP § 1295***

Defendants cite to other types of cases issued in other jurisdictions, where they have successfully compelled arbitration of consumer claims. Those decisions have no applicability to the present dispute. In California, an arbitration agreement is entirely unenforceable pertaining to claims related to professional negligence of a health care provider without appropriate statutory notice. Notably, California does not exclude claims like these from arbitration automatically with respect to subsections (a) and (b) of 1295, but conditions the enforceability of such arbitration agreements on reasonable consumer disclosures and protections. Plaintiff pled the lack of compliance with *CCP §*

*1295* in the Compl. at ¶ 16.  None of Defendants' attempts to avoid a clear application of *CCP § 1295* have any merit.

### A.  Defendants Do Not Dispute that the Arbitration Form does not comply with *CCP § 1295*

It is beyond cavil that the purported arbitration Form does not comply with *CCP § 1295*. *Rosenfield v. Superior Court* (1983) 143 Cal. App.3d 198, 200 (failure of a health care contract to contain the advisements in subdivision (a) and (b) of section 1295 automatically renders unenforceable the arbitration agreement)[3]; *Burks v. Kaiser Found. Health Plan, Inc.*, 160 Cal. App. 4th 1021 (Cal. App. 3d Dist. 2008) (affirming a trial court finding that an arbitration provision contained in the one-page Kaiser enrollment form was not "prominently displayed."); *cf. Malek v. Blue Cross of California*, 121 Cal. App. 4th 44, 71-72 (Cal. Ct. App. 4th Dist. 2004) ("We therefore conclude that the penalty, namely unenforceability for noncompliance with the arbitration disclosure requirements, is not disproportionately harsh in relation to the gravity of the violation.").

In order to be so insulated, the contract must contain prominent notice, in statutory language, of the arbitration clause.  Its purpose is to give people signing such Forms the forewarning that they are relinquishing the right to a jury or court trial if a malpractice issue arises.  (*Wheeler v. St. Joseph Hospital* (1976) 63 Cal. App.3d 345, 361, fn. 11. That that end, subdivision (a) of section 1295 requires an arbitration clause in the first article of a medical services contract and specifies the language to be used.  Subdivision (b) requires a statement in 10-point bold red type, again in specified language, to be placed immediately before the signature line of the contract.  (Stats. 1975, Second Ex. Sess. 1975-1976, ch. 1, § 26.6, pp. 3975-3976.)

---

[3] When interpreting state law, district courts are bound by a decision from the highest state court. *In re Kirkland,* 915 F.2d 1236, 1238 (9th Cir. 1990).  In the absence of convincing evidence that the highest court of the state would decide differently a federal court is obligated to follow the decision of the state's intermediate courts. *Id.* at 1239 (*quoting Am. Triticale, Inc. v. Nytco Servs., Inc.*, 664 F.2d 1136, 1143 (9th Cir. 1981).

1    Here, the arbitration Form fails to comply with 1295(a) because it does not include any of the
2    language, in red, that ***shall*** appear in the arbitration Form.[4]  This arbitration Form fails to comply with
3    1295(b) because it (a) does not include the language that ***must*** appear in the arbitration Form, and (b)
4    there is no such language immediately below the signature line. It also lacks red font type, and
5    specified language. *Rodriguez v. Superior Court*, 176 Cal. App. 4th 1461, 1470 (2009) ("No section
6    1295 Form exists unless each party signing the document consents, that is, acts voluntarily, is aware
7    of the nature of the document, has turned his or her attention to its provisions or reasonably should
8    have turned his or her attention to its provisions.").

9    **B.  The FAA Does Not Preempt *CCP § 1295***

10    This Court has recognized that the Federal Arbitration Act does not preempt the application of
11    similar California notice requirements based on the McCarran-Ferguson Act ("McCarran").  *Cf.*
12    *Hunter v. Kaiser Foundation Health Plan*, 434 F. Supp. 3d 764, 772 (N.D. Cal. 2020) ("Courts have
13    consistently held that the Federal Arbitration Act (FAA) does not preempt Section 1363.1 because the
14    McCarran-Ferguson Act (15 U.S.C. § 1011 *et seq.*) preserves the ability of states like California to
15    regulate the insurance industry.") *citing Brown v. Kaiser Found. Health Plan, Inc.*, No. E069356, 2019
16    WL 2539179, at *4 (Cal. Ct. App. June 20, 2019) (the FAA does not preempt the related disclosure
17    requirements of *CCP § 1363.1*).

18    Defendants cite to an earlier and superseded decision of *Scott v. Yoho*, 248 Cal. App. 4th 392,
19    407 (Cal. Ct. App. 2016).  *Yoho* is inapplicable to the facts of this case for several reasons.  First, by
20    its own terms, the decision was one of "limited preemptive effect."  *Yoho, Id.* at 395 ("We conclude
21    the three arbitration Forms are subject to limited preemptive effect of the Federal Arbitration Act; the
22    30-day rescission right in Code of Civil Procedure section 1295, subdivision (c).").  This case does not

23

24

---

25    [4] *See generally Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 n.9 (1995) shall generally means
26    must); Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 114 (2012)
       (observing that "when the word shall can be reasonably read as mandatory, it ought to be so read");
27    *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77-78 (9th Cir. 1987) (shall is a mandatory
       term).
28

involve a right of rescission pursuant to subdivision (c).[5]   More fundamentally, *Yoho* did <u>not</u> consider the right of a litigant in Federal Court to assert reverse preemption under McCarran, thus negating FAA preemption.   Plaintiff asserts reverse preemption here.

McCarran imposes a "clear-statement rule" that "state laws enacted 'for the purpose of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise." *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 507-08 (1993). McCarran vests in the states' regulation over "every person" engaged in the business of insurance, and declares that "[n]o Act of Congress shall be construed to invalidate or impair" any such state laws. 15 U.S.C. § 1012(b).   As the Supreme Court has held, McCarran–Ferguson prohibits federal preemption of state statutes regulating insurance and effectuates reverse preemption when the federal law does not specifically relate to the business of insurance, the federal law would invalidate, impair or supersede the state statute if applied, and the state statute was enacted for the purpose of regulating insurance. *See Fabe*, 508 U.S. at 501, 113 S.Ct. 2202; *Humana Inc. v. Forsyth*, 525 U.S. 299, 307, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999); *Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205, 1208–09 (9th Cir. 2010). There is no dispute between the parties that the FAA would invalidate, impair, or supersede CCP § 1295 if applied (particularly based on Defendants' arguments in their Mot.), CCP § 1295 (and related and companion statutes) were enacted for the purpose of regulating insurance, and finally, the FAA does not specifically relate to the business of insurance.[6]

*Brown* has clarified the lack of preemption: "[t]he trial court is not required to harmonize section 1363.1 with the FAA because the McCarran-Ferguson Act (15 U.S.C. § 1011 *et. seq.*) operates to shield the statute from preemption. (*Imbler v. PacifiCare of Cal., Inc.* (2002) 103 Cal.App.4th 567, 571-573 (*Imbler*) [The purpose of the McCarran-Ferguson Act was to '*insure that the states would*

---

[5] *Yoho*, *Id.* at 404 ("The language, font, and color requirements specified in subdivisions (a) and (b) are present in all three arbitration Forms executed by Ms. Parker.").   This is the opposite of the case here, where Defendants have not complied with the language, font, or color requirements of (a) and (b).

[6] Unlike the FAA, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") is not an "act of Congress" and thus, reverse preemption does not apply on those unique facts concerning <u>international</u> arbitration (not applicable here). *CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Georgia, LLC*, 8 F.4th 1007 (9th Cir. 2021).

continue to enjoy broad authority in regulating the dealings between insurers and their policyholders.']; *Smith v. PacifiCare Behavioral Health of Cal., Inc.* (2001) 93 Cal.App.4th 139, 152-162 [The FAA cannot preempt section 1363.1 because of the operation of the McCarran-Ferguson Act, which was enacted so that the primary regulation of the insurance business would lie with the states, not the federal government.].).'"

*Third*, the finding in *Yoho* is not inconsistent with the arguments and holdings from other decisions, that subsections (a) and (b) of § 1295 do not preclude claims from being brought in arbitration outright. *Kindred Nursing Limited Partnership v. Clark*, 137 S. Ct. 1421, 1423 (2017) ("[t]he FAA thus preempts any state rule discriminating on its face against arbitration—for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.'"). 1295(a) and 1295(b) certain do not preclude a particular type of claim nor do they stand as any obstacle to implementation of the FAA.

*Fourth*, the Federal Arbitration Act is not stated nor referenced anywhere in the Form, as is the case in nearly all arbitration agreements. Instead, there is a California choice of law provision in the document Mr. Navarro has presented. Navarro Decl., **Ex. 4**, Terms and Conditions, p. 2. *See Yoho*, Id. at 403-404 ("[t]he agreements do not state that the arbitration agreements' enforcement is governed by California law."). For all these reasons, *CCP § 1295* is not preempted by the FAA.

C. ***CCP § 1295 Applies to Defendants***

Defendants assert that they are not "health care providers." Mot. 15. This argument, at minimum, contemplates disputed questions of fact, and Defendants have not carried their summary judgment like standard that they are not providing health care. Preliminary, Plaintiff has pled that each Defendant is a "health care provider." Comp. ¶ 17. Defendants do not rebut the assertion that they are "clinics" or "health care providers" in the Skinner Decl., nor do they provide any evidence. Instead, they argue *ipse dixit* that they "provide a telehealth platform through which licensed providers interact with and provide clear aligner therapy to their patients and SDC's customers" and this somehow excuses them from being "health care providers." Mot. 15. Defendants conveniently ignore that co-defendant and conspirator Jeffrey Sulitzer was such a licensed provider who interacts

with, and provides, clear aligner therapy to Defendants' patients.  Defendants also ignore the pled facts that are to the contrary in the Complaint generally.  Comp. ¶ 8-19.

The term "health care provider" is the exact definition used in the medical malpractice statute, Code of Civil Procedure Section 340.5, and includes all professionals and their "legal representatives." Based on Defendants' argument, a claim for malpractice dispute would never be available against the Owner/Lessee of a hospital because the services are being provided under a different medical practice. That is simply not the law.  The term "Health care providers" has also been defined broadly under 340.5, to include injury that results from alleged negligence in the use and maintenance of equipment needed to implement the doctor's order concerning medical treatment. *Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75.  Moreover, the Defendants describe plaintiff and all other putative class members as "patients" in the very document they have presented to this Court, including in the arbitration paragraph.  (Dkt. 20-1, p. 9, p. 2) ("and include the names of the patient and his/her attorney"); *see also* Terms and Conditions, Navarro Decl., Ex. 4 defining defendant as the "provider").  Third, Defendants argue that they are not engaged in the "practice of dentistry," pursuant to section 1295; that is the opposite of what the Complaint and the accusation by the California Dental Board, allege.  *Covenant Care, Inc. v. Super. Ct.* (2004) 32 Cal.4th 771, 785 ("the legislative history of section 425.13 demonstrates that the Legislature's intent in enacting the statute was to protect health care providers (or practitioners) only in their professional capacity as providers; there was no intent to protect them in any other capacity.").  In short, Defendants have not met their burden of establishing that they are not service providers for the purpose of *CCP § 1295*.

**D.  *CCP § 1295* is not a safe harbor provision**

Defendants suggest that § 1295 has no teeth, and it should be read as a non-binding advisory statute. They ignore the commands of the two subsections they have admittedly violated, each commanding mandatory behavior.  Defendants neglect that all California decisions have concluded that a failure to comply with (a) and (b) renders the entire agreement null in formation and unenforceable.  *See e.g. Rosenfield v. Superior Court* (1983) 143 Cal. App.3d 198, 200 (failure of a health care contract to contain the advisements in subdivision (a) and (b) of section 1295 automatically renders unenforceable the arbitration Form); *Rodriguez v. Superior Court*, 176 Cal. App. 4th 1461,

1470 (2009) ("No section 1295 Form exists unless each party signing the document consents, that is, acts voluntarily, is aware of the nature of the document, has turned his or her attention to its provisions or reasonably should have turned his or her attention to its provisions.")

Defendants grossly misread the holding in *Dinong v. Superior Court*, 102 Cal. App. 3d 845, 849 (Cal. Ct. App. 1980). *Dinong* suggests that a defendant who *complies with the subsections of 1295*, is insulated pursuant to subjection (c). Here, there is no question Defendants did not comply. "In order to be so insulated, the contract must contain prominent notice in statutory language, of the arbitration clause." *Id.* at 849. Defendants do not dispute that the Form fails to include prominent notice in statutory language of the arbitration clause. Defendants' argument that "shall" and "must" in subsections (a) and (b), be rendered nugatory and permissive in this context, is an absurd interpretation of a California statute that cannot be countenanced and is not supported by a single case. Defendants' argument is also an improper disavowal of unanimous authority finding that the failure to comply with these mandatory provisions, renders the arbitration Form entirely unenforceable.

## VIII.   **THE PURPORTED ARBITRATION FORM FAILS UNDER THE *MCGILL* RULE**

The Court should retain jurisdiction over and proceed to allow litigation over all causes of action, because Plaintiff seeks "public injunctive relief" by way of restitution and forward-looking changes in practices that would benefit the public. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (Cal. 2017). Here, Plaintiff has pled the right to public injunctive relief. *See e.g.*, Compl. ¶ 19.

In *McGill*, the California Supreme Court held that an arbitration Form precluding a consumer from seeking injunctive relief otherwise authorized by California's consumer protection statutes in any forum was "invalid and unenforceable under state law insofar as it purports to waive *McGill*'s statutory right to seek such relief." *McGill*, 2 Cal. 5th at 961; *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019) (affirming that the FAA did not preempt the *McGill* rule and finding district court did not err by refusing to stay non-arbitrable claims). Defendants impermissibly cite to *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 930 (9th Cir. 2013) for the premise that FAA preempts *McGill*, Mot. p. 7, but that case and the others cited by Defendants, were superseded by *Blair* in 2019. Thus, *Ferguson* is no longer valid authority for that proposition.

The *McGill* Court explained that "public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public.' . . . Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *McGill*, 2 Cal. 5th at 955 (internal citations omitted).

*First*, the Form does in fact preclude injunctive relief. "The Demand for Arbitration **must** be in writing to all parties, identify each defendant, describe the claim against each party, state the ***amount of damages sought***, and include the names of the patient and his/her attorney." Form, Dkt. 20-1, p. 9 (emphasis added). By allowing only "damages sought" to be joined to the demand in arbitration, this implies the exclusion of being entitled to any other form of relief including public injunctive relief.

*Second*, it is not apparent that even if public injunctive relief was not precluded in arbitration, that such public injunctive relief could be obtained based on the contract and rules of AAA. R-47 of the AAA requires any such remedy to be "within the scope of the agreement of the parties." AAA R-47. Here, the public injunctive relief is not within the scope of the purported Form and is in fact expressly or impliedly excluded as to Plaintiff. Second, the AAA rules only permit injunctive relief to be awarded on an "interim" basis. AAA R-37 ("The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property…").[7] The remedy Plaintiff has sought in the prayer of his Complaint is permanent and final injunctive relief. If the remedy is unavailable in arbitration because it is not allowed to be brought in arbitration or it would be practically unavailable, the public injunctive relief must proceed in Court. As the Supreme Court has held, arbitration cannot frustrate the vindication of state or federal rights. *Am Express Co. v. Italian Colors Rest.*, 470 U.S. 228, 236 (2013). Without clarification on this point of law, arbitration could stand to do just that.

---

[7] Although, we are aware of some authority indicating public injunctive relief may be available in arbitration, *Ionescu v. Extra Space Storage Inc.*, 19-CV-02226-YGR, 2019 WL 3997480, at *4 (N.D. Cal. Aug. 23, 2019), no award has been confirmed granting such relief that we have seen, nor has decision analyzed whether the AAA rules even permit public injunctive relief on a final basis.

IX.     **THE FORM IS UNCONSCIONABLE**

Preliminarily, this case involves matters related to "performance" which is regulated by the law prevailing at the "place of performance." *Scudder v. Union Nat. Bank of Chicago*, 91 U.S. 406 (1875). In California, a contract is likewise governed by the law and usage of the place where it is to be performed. *Front. Oil Corp. v. RLI Ins. Co.*, 2007 Cal. App. LEXIS 1298 (2d Dist. August 6, 2007) (nature of the contract and the location of the services to be provided); *Henderson v. Super. Ct.*, 142 Cal. Rptr. 478 (Cal. Ct. App. 1978); *Great Nor. Ry. Co. v. Sup. Ct.* (1970) 12 Cal.App.3d 105, 113. Thus, and in addition to the California choice of law provision, Navarro Decl., **Ex. 4**, California law applies.

A. **The Form is Procedurally Unconscionable**

Procedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa. *Bridges Fund v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). The contradictory, difficult to understand, and pre-printed Form drafted by SDC, which are not part of a separate document providing for arbitration, is at minimum, procedurally unconscionable. *Ali v. J.P. Morgan Chase Bank, N.A.*, No. 14-15076, 2016 WL 1380922, at *1 (9th Cir. Apr. 7, 2016) ("[a]dhesive contracts are at least minimally procedurally unconscionable under California law."); *Fardig v. Hobby Lobby Stores, Inc.*, 2014 U.S. Dist. LEXIS 87284, at *10 (C.D. Cal. June 13, 2014).

Additionally, Defendants' failure to provide a physical copy of the AAA rules or AAA policies, further supports a finding of procedural unconscionability. *Pokorny v. Quixtar, Inc.* 601 F.3d 1987, 1004 (9th Cir. 2010); *Aviles v. Quick Pick Express, LLC*, Case No. CV-15-5214-MWF, 2015 WL 9810998, at *7 (C.D. Cal. Dec. 3, 2015); *Attia v. Neiman Marcus Group*, Case No. 8:16-cv-00504-DOC (FFM), *12 (C.D. Cal. June 27, 2016). Defendants have not provided the AAA rules, nor have they produced any evidence of electronic assent by the class members or Plaintiff. A stray reference in the declaration does not appear to reflect source code of any electronic transmission. Finally, there is a disparity in bargaining power between a patient and an operator, which further informs the fact that the Form is procedural unconscionability. *Quixtar*, *Id.* at 996. The Form, is thus, procedurally unconscionable.

B.  **The Form is Substantively Unconscionable**

Substantive unconscionability concerns how one-sided a bargain is.  *Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 693 (Cal. 2000).   An arbitration clause that lacks mutuality without a reasonable justification is sufficient to find unconscionability. *Id*. at 117-18.  There are three components that independently render Defendants' arbitration policy substantively unconscionable: the non-mutual right of Defendants to litigate in Court, the lack of any suggestion of an actual agreement and vagueness, and the cost and expense of arbitration exceed the potential that can be gained if the arbitration were to proceed on an individual basis.

1.  Requiring one party to arbitrate, but not the other is unconscionable.

Requiring one party to arbitrate its claims, but not the other, is a paradigmatic form of substantive unconscionability under California law. *See Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 984 (Cal. 2003); *Armendariz v. Foundation Health Psychcare Services, Id.* at 693.   The arbitration provision in the Form only applies to the Plaintiff patient, and not the Defendants.  Form, pp. 8-9 ("I hereby agree that any dispute…")  This alone, renders the Form substantively unconscionable.

2.  The Form Does Not Even Suggest any Agreement until Page 8

The Form does not imply an agreement, it is not labeled an agreement, and the only reference to the term "agree" or "contract" is at page 8.  The Form is entitled "How Does the SmileDirectClub Aligner Therapy System Work?"  Dkt. No. 20-1.   Not until page eight of the single space document is there any suggestion of any Form or contract.  "AGREEMENT TO ARBITRATE."   Because there is no suggestion of any agreement to do anything on the first page, as is the case with the contract of nearly every legitimate company, the Form is misleading and unfair.

3.  The Expense of Arbitration Dwarfs Plaintiff's Individual Claims

Where the cost of a neutral dwarfs available recovery, the policy is unconscionable. *Chavarria v. Ralph's Grocery Store Company*, 733.F3d 916 (9th Cir. 2013).   Even if Plaintiff were assessed only one-half of the total fee, the Plaintiff's share would still be far more than the $350 filing fee of this Court. 28 U.S.C. § 1914. *See, e.g., Comb v. PayPal*, 218 F. Supp. 2d 1165 (N.D. Ca. 2002) (estimated $5000 arbitral fee held excessive); *Ting*, 319 F.3d at 1151 (approving a Tenth Circuit decision "holding unenforceable a fee-splitting provision that would cost an employee between $1875 and $5000 to

resolve a particular claim").  The costs that Plaintiff would be required to pay to participate in Defendants' arbitration process would prejudice Plaintiff from bringing his action. Thus, the cost-sharing provisions are unconscionable and unenforceable. Further, the expense of arbitration would dwarf the Plaintiff's individual claims. Because the arbitration clause interferes with cost shifting rights, and would dwarf the total individual claims at issue in this litigation, the arbitration provision is unconscionable.

### C.  The Unconscionable Terms Should Not Be Severed

The entire contract is "wholly unenforceable" if the Court detects an "insidious pattern" that "functions as a thumb on [defendant's] side of the scale" if a dispute arises.  *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1180 (9th Cir. 2003). In *Quixtar*, the 9th Circuit held that the District Court enjoys broad discretion to determine that an arbitration agreement should not be enforced *in its entirety*. *Quixtar*, *Id*. at 1003; *see generally Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272 (9th Cir. 2017); Cal. Civ. Code § 1670.5(a); *see also Perez v. DIRECTV Group Holdings, L.L.C.*, No. 8:16–cv–1440–JLS–DFMx, 2017 WL 1836357 (C.D. May 1, 2017).

Saving an arbitration clause by severing each individual problematic provision would allow a company to draft a one-sided agreement and then whittle down to the least-offensive agreement when faced with litigation, rather than drafting fair agreements in the first instance. Thus, a court may refuse to enforce an arbitration agreement that is "so permeated with unconscionable clauses that we cannot remove the unconscionable taint from the Form." *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 788 (9th Cir. 2002); *Bridges Fund v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1006 (9th Cir. 2010); *Armendariz*, 24 Cal. 4th at 124; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1293 (9th Cir. 2006).

Here it is plain that the entire Defendants' Terms, with nothing suggesting any agreement until page eight, involve a systematic effort to impose an inferior forum on Plaintiff and other similarly situated patients. The list of multiple defects goes on and on: bias, lack of mutuality, vagueness, excessive fees, potential other agreements not including an arbitration provision.  If the Court is not satisfied that all of this is so, Plaintiff requests an opportunity for limited discovery on the facts relevant

1  to arbitrability before Defendants' motion is decided.  *Blair v. Scott Specialty Gases*, 283 F.3d 595,
2  609 (3d. Cir. 2002).

3  X.      **EVIDENTIARY OBJECTIONS**

4      Pursuant to Civil L.R. 7-3(a), Plaintiff submits his evidentiary objections to the Declaration
5  of Justin Skinner [Dkt. No. 20] ("Skinner Decl.").

6      Plaintiffs object to the conclusory allegations in the Skinner Decl. that class member and
7  Plaintiff's purported assent to the Form, specifically, "Customers manifest agreement by affirmatively
8  clicking a clickwrap box like the following…"  Skinner Decl., ¶14.  Plaintiff objects that this evidence
9  does not comply with *Nguyen v. Barnes & Noble, Inc.*, 76 F.3d 1171, 1173 (9th Cir. 2014) by failing
10  to include the actual design and appearance of the website, and should be disregarded and not
11  considered based on (1) the best evidence rule, (2) the rule of completeness, (3) the rule of adverse
12  interest, and (4) hearsay.

13      The "best evidence rule" applies under FRE 2001 where secondary evidence is offered to prove
14  the content of a writing.  A witness' reporting of evidence from a writing is inadmissible under the
15  best evidence rule.  *Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F.3d 924, 935-36 (9th
16  Cir. 2002); *see also Railroad Management Co., L.L.C. v. CFS Louisiana Midstream Co.*, 428 F.3d
17  214, 219, fn. 2 (5th Cir. 2005) (when the writing is central to the case, oral testimony cannot be
18  substituted for writing).  The adverse interest rule applies where a party has failed to produce relevant
19  evidence within his or her control, and such failure to produce dictates an adverse ruling.  *Interstate
20  Circuit, Inc. v. United States* 306 U.S. 208, 226 (1939).  The Rule of Completeness under FRE 106
21  allows an adverse party to require the introduction of any other part of the writings in the interest of
22  fairness.  *Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 669 (7th Cir. 2003).

23      Here, the basis by which class members enrolled is essential to the disposition of the Motion to
24  compel arbitration, and in fact essential under controlling authority.  Defendants have offered certain
25  suggestions about what a customer may agree to through a cropped and enlarged click box portion of
26  the screen, but none of the documents or images embedded in the Declaration reflect assent or an
27  electronic signature in accordance with *Nguyen*, and the design of the site that consumers see was not
28  included.   Mr. Skinner's statements are insufficient under the Federal Rules of Evidence, and

constitute an out of court statement offered to prove the truth of the matter asserted – that patients provided electronic assent and were constructively put on notice of the Form.   Skinner's statements to this effect, should be disregarded.  For the same reasons, and based on lack of foundation, and hearsay, we object to ¶¶20-27 of the Skinner Decl.

XI.   **CONCLUSION**

The Motion should be denied.  Alternatively, Plaintiff requests that the Court set a Jury Trial on any triable fact, and a reasonable opportunity for discovery. 9 U.S.C. § 4; *see also Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("[W]hen one party disputes 'the making of the arbitration Form,' the Federal Arbitration Act requires that 'the court [ ] proceed summarily to the trial thereof' before compelling arbitration under the Form.") (brackets in original); *GIB, LLC v. Salon Ware, Inc.*, 634 F. App'x 610, 611 (9th Cir. 2016); *Barraza v. Cricket Wireless LLC*, No. C 15-02471 WHA, 2015 WL 6689396, at *6 (N.D. Cal. Nov. 3, 2015).


Dated:   February 22, 2022                Respectfully submitted,


/s/ *Blake J. Lindemann*

Blake J. Lindemann
California Bar No. 255747
E-mail:  blake@lawbl.com
Donna R. Dishbak
California Bar No. 259311
E-mail:  donna@lawbl.com
**LINDEMANN LAW FIRM, APC**
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone No: 310-279-5269
Facsimile No: 310-300-0267

*Attorneys for Plaintiff and the Proposed Classes*

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 22, 2022, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

*/s/ Blake J. Lindemann*         
