1

**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747

2
DONNA R. DISHBAK, SBN 259311
433 N. Camden Drive, 4th Floor

3
Beverly Hills, CA 90210
Telephone:   (310) 279-5269

4
Facsimile:   (310) 300-0267
E-Mail:      blake@lawbl.com

5

6
*Attorneys for Plaintiff and the Proposed Classes*

7
**UNITED STATES DISTRICT COURT**

8
**NORTHERN DISTRICT OF CALIFORNIA**

9

10

11
ARNOLD NAVARRO, on behalf of himself
and all others similarly situated,

| | |
|---|---|
| Case No. 3:22-cv-00095-WHO | |

Judge: Hon. William H. Orrick

12

13
                    Plaintiff,

14
v.

**DECLARATION OF BLAKE J.
LINDEMANN IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
ARBITRATION**

15

16
SMILEDIRECTCLUB, INC.;
SMILEDIRECTCLUB, LLC, and JEFFREY
SULITZER; DOES 1–10,

17

18
                    Defendants.

| Date: | March 30, 2022 |
|---|---|
| Time: | 2:00 p.m. |
| Courtroom: | 2, 17th Floor |
| Judge: | Hon. William H. Orrick |

19

20

Date Removed: January 6, 2022

21

22

23

24

25

26

27

28

1

## DECLARATION OF BLAKE J. LINDEMANN

I, BLAKE J. LINDEMANN, declare pursuant to 28 U.S.C. § 1746 under penalty of perjury, that the following is true and correct:

1.     I am over the age of 21 years and I am competent to make this Declaration. I have personal knowledge of the facts as stated in this Declaration, or if I rely on business records, I will so personally state. I am one of the attorneys for Plaintiff Arnold Navarro.  I am a member in good standing of the State Bar of California. I submit this declaration in support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration.

2.     On January 6, 2022, Defendants removed the Original Class Action Complaint ("Compl.) which was filed in the Alameda Superior Court on December 3, 2021.  The gravamen of Plaintiff's Compl. is that Defendants, including two corporate entities and their Chief Clinical Officer, are engaged in the unauthorized practice of dentistry, and thus, the Defendants' contracts for medical services with Plaintiff and the Classes, are subject to avoidance or rescission on a class-wide basis.  Plaintiff has not asserted a Federal cause of action in this case.

3.     Plaintiff pled in his Complaint that Plaintiff and all of the putative class members are citizens of the State of California.  Compl., ¶¶ 4, 20.  This case concerns a uniquely California issue; whether the medical services provided at the various shops in California operated by the Defendants, constitute the unauthorized practice of dentistry in California.  In essence, the class can only be a California class, and this is by definition, not a nationwide class action, but a California only class action.

4.     Attached as **Ex. 1** is a true and accurate copy of the summary record for the license of defendant Jeffrey Sullitzer, which includes all of the license relationships to the Smile Direct Club "shops" operated in the State of California.  This record was obtained at the Dental Board of California:

https://search.dca.ca.gov/details/4401/DDS/51841/d260ec1509b39dc102c0aad391b609b3.

5.     Attached as **Ex. 2** is a true and accurate copy of the Second Amended Accusation dated September 1, 2021, which I obtained from the Dental Board of California's website, and which is also found at a link on the summary page for Jeffrey Sullitzer, as referenced in Ex. 1.

6.      Attached as **Ex. 3** is a true and accurate copy of the Linkedin Page for Jeffrey Sullitzer that I obtained at Linkedin.com.

7.      The Federal Arbitration Act ("FAA") would invalidate, impair or supersede *CCP § 1295* if applied (particularly based on Defendants' arguments in their Mot.), *CCP § 1295* (and related and companion statutes) were enacted for the purpose of regulating insurance, and finally, the FAA does not specifically relate to the business of insurance.

Executed this 22nd day of February, 2022 at Beverly Hills, California.


*/s/ Blake J. Lindemann*
BLAKE J. LINDEMANN

# EXHIBIT 1

# DENTAL BOARD OF CALIFORNIA
## LICENSING DETAILS FOR: 51841

**NAME:** SULITZER, JEFFREY ALAN
**LICENSE TYPE:** DENTIST
**PRIMARY STATUS:** CURRENT - ACTIVE
**ADDRESS OF RECORD**
271 EASTRIDGE DR
WOODLAND WA 98674-9346
COWLITZ COUNTY

**ISSUANCE DATE**
OCTOBER 7, 2003

**EXPIRATION DATE**
JUNE 30, 2023

**CURRENT DATE / TIME**
FEBRUARY 22, 2022
10:46:08 AM

## PUBLIC RECORD DOCUMENTS

› AMENDED/SUPPLEMENTAL ACCUSATION/PETITION TO REVOKE/SOI (1)
- **DOCUMENT:** AMENDED/SUPPLEMENTAL ACCUSATION/PETITION TO REVOKE/SOI **DATE:** SEPTEMBER 1, 2021

## LICENSE RELATIONSHIPS

### AO TO DDS OR OMS (OWNERS)

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT
**RELATED PARTY ROLE:** ADDITIONAL OFFICE PERMIT
**NAME:** JEFFREY SULITZER, D.M.D., PROFESSIONAL CORPORATION
**LICENSE/REGISTRATION TYPE:** ADDITIONAL OFFICE PERMIT
**LICENSE NUMBER:** 79577 **PRIMARY STATUS:** EXPIRED

**ADDRESS :**
1601 VINE ST
LOS ANGELES CA 90028
LOS ANGELES COUNTY

MAP

### AO TO DDS OR OMS (OWNERS)

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT
**RELATED PARTY ROLE:** ADDITIONAL OFFICE PERMIT
**NAME:** JEFFREY SULTZER, D.M.D., PROFESSIONAL CORPORATION
**LICENSE/REGISTRATION TYPE:** ADDITIONAL OFFICE PERMIT
**LICENSE NUMBER:** 79664 **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
75 E SANTA CLARA ST
SAN JOSE CA 95113
SANTA CLARA COUNTY

MAP

### AO TO DDS OR OMS (OWNERS)

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT
**RELATED PARTY ROLE:** ADDITIONAL OFFICE PERMIT
**NAME:** JEFFREY SULITZER, D.M.D., PROFESSIONAL CORPORATION
**LICENSE/REGISTRATION TYPE:** ADDITIONAL OFFICE PERMIT
**LICENSE NUMBER:** 79646 **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
1430 TRUXTON AVE 5TH FL
BAKERSFIELD CA 93301
KERN COUNTY

MAP

### AO TO DDS OR OMS (OWNERS)

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT
**RELATED PARTY ROLE:** ADDITIONAL OFFICE PERMIT
**NAME:** JEFFREY SULITZER, D.M.D., PROFESSIONAL CORPORATION
**LICENSE/REGISTRATION TYPE:** ADDITIONAL OFFICE PERMIT
**LICENSE NUMBER:** 79647 **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
1060 FULTON MALL
FRESNO CA 93721
FRESNO COUNTY

MAP

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/
ORAL MAXILLOFACIAL SURGERY PERMIT
**RELATED PARTY ROLE:** ADDITIONAL OFFICE
PERMIT
**NAME:** JEFFREY SULITZER, D.M.D., PROFESSIONAL
CORPORATION
**LICENSE/REGISTRATION TYPE:** ADDITIONAL OFFICE
PERMIT
**LICENSE NUMBER:** 79648   **PRIMARY STATUS:**
CANCELLED

**ADDRESS :**
763 SOUTH MAIN ST STE 104
ORANGE CA 92868
ORANGE COUNTY

MAP

## FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF
JEFFREY SULITZER, D.M.D
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME
PERMIT
**LICENSE NUMBER:** 13995   **PRIMARY STATUS:**
CANCELLED

**ADDRESS :**
1111 BROADWAY 3RD FLOOR
OAKLAND CA 94607
ALAMEDA COUNTY

MAP

## FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** ANTELOPE VALLEY DENTAL GROUP,
JEFFREY A SULITZER, DMD, INC.
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME
PERMIT
**LICENSE NUMBER:** 9232   **PRIMARY STATUS:**
CANCELLED

**ADDRESS :**
1037 E PALMDALE BOULEVARD
STE. 203
PALMDALE CA 93550
LOS ANGELES COUNTY

MAP

## FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF
JEFFREY SULITZER, D.M.D.
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME
PERMIT
**LICENSE NUMBER:** 14209   **PRIMARY STATUS:**
EXPIRED

**ADDRESS :**
75 E SANTA CLARA ST
SAN JOSE CA 95113
SANTA CLARA COUNTY

MAP

## FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** ANTELOPE VALLEY DENTAL GROUP,
JEFFREY A SULITZER, DMD, INC
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME
PERMIT
**LICENSE NUMBER:** 4719   **PRIMARY STATUS:**
CANCELLED

**ADDRESS :**
38655 9TH STREET EAST
PALMDALE CA 93550
LOS ANGELES COUNTY

MAP

## FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF
JEFFREY SULITZER, D.M.D
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME
PERMIT
**LICENSE NUMBER:** 13998   **PRIMARY STATUS:**
EXPIRED

**ADDRESS :**
600 B ST STE 300
SAN DIEGO CA 92101
SAN DIEGO COUNTY

MAP

## FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF
JEFFREY SULITZER, D.M.D
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME
PERMIT

**ADDRESS :**
655 MONTGOMERY ST 7TH FLOOR
SAN FRANCISCO CA 94111
SAN FRANCISCO COUNTY

MAP

# FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT
**LICENSE NUMBER:** 13999  **PRIMARY STATUS:** EXPIRED

**ADDRESS :**
1601 VINE ST
LOS ANGELES CA 90028
LOS ANGELES COUNTY
MAP

# FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT
**LICENSE NUMBER:** 14180  **PRIMARY STATUS:** EXPIRED

**ADDRESS :**
1060 FULTON MALL
FRESNO CA 93721
FRESNO COUNTY
MAP

# FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT
**LICENSE NUMBER:** 13997  **PRIMARY STATUS:** EXPIRED

**ADDRESS :**
1240 ROSECRANS AVE #120
MANHATTAN BEACH CA 90266
LOS ANGELES COUNTY
MAP

# FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT
**LICENSE NUMBER:** 14181  **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
763 SOUTH MAIN ST STE 104
ORANGE CA 92868
ORANGE COUNTY
MAP

# FNP OWNERS

**LICENSE/REGISTRATION ROLE:** OWNERS
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT
**LICENSE NUMBER:** 14182  **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
1430 TRUXTON AVE 5TH FLOOR
BAKERSFIELD CA 93301
KERN COUNTY
MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D
**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT
**LICENSE NUMBER:** 13997  **PRIMARY STATUS:** EXPIRED

**ADDRESS :**
1240 ROSECRANS AVE #120
MANHATTAN BEACH CA 90266
LOS ANGELES COUNTY
MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT
**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT
**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D.

**ADDRESS :**
75 E SANTA CLARA ST
SAN JOSE CA 95113
SANTA CLARA COUNTY
MAP

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 14209   **PRIMARY STATUS:** EXPIRED

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT

**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT

**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D.

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 14182   **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
1430 TRUXTON AVE 5TH FLOOR
BAKERSFIELD CA 93301
KERN COUNTY

MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT

**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT

**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D.

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 14181   **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
763 SOUTH MAIN ST STE 104
ORANGE CA 92868
ORANGE COUNTY

MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT

**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT

**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 13995   **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
1111 BROADWAY 3RD FLOOR
OAKLAND CA 94607
ALAMEDA COUNTY

MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT

**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT

**NAME:** ANTELOPE VALLEY DENTAL GROUP, JEFFREY A SULITZER, DMD, INC

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 4719   **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
38655 9TH STREET EAST
PALMDALE CA 93550
LOS ANGELES COUNTY

MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT

**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT

**NAME:** ANTELOPE VALLEY DENTAL GROUP, JEFFREY A SULITZER, DMD, INC.

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 9232   **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
1037 E PALMDALE BOULEVARD
STE. 203
PALMDALE CA 93550
LOS ANGELES COUNTY

MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT

**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT

**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 13998   **PRIMARY STATUS:** EXPIRED

**ADDRESS :**
600 B ST STE 300
SAN DIEGO CA 92101
SAN DIEGO COUNTY

MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT

**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT

**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 13999   **PRIMARY STATUS:** EXPIRED

**ADDRESS :**
1601 VINE ST
LOS ANGELES CA 90028
LOS ANGELES COUNTY

MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT

**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT

**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 13996   **PRIMARY STATUS:** CANCELLED

**ADDRESS :**
655 MONTGOMERY ST 7TH FLOOR
SAN FRANCISCO CA 94111
SAN FRANCISCO COUNTY

MAP

# FNP TO DDS OR OMS

**LICENSE/REGISTRATION ROLE:** DENTAL LICENSE/ ORAL MAXILLOFACIAL SURGERY PERMIT

**RELATED PARTY ROLE:** FICTITIOUS NAME PERMIT

**NAME:** SMILE DIRECT CLUB, DENTAL GROUP OF JEFFREY SULITZER, D.M.D.

**LICENSE/REGISTRATION TYPE:** FICTITIOUS NAME PERMIT

**LICENSE NUMBER:** 14180   **PRIMARY STATUS:** EXPIRED

**ADDRESS :**
1060 FULTON MALL
FRESNO CA 93721
FRESNO COUNTY

MAP

# EXHIBIT 2

ROB BONTA
Attorney General of California
KAREN R. DENVIR
Supervising Deputy Attorney General
DANIEL D. MCGEE
Deputy Attorney General
State Bar No. 218947
STEPHANIE ALAMO-LATIF
Deputy Attorney General
State Bar No. 283580
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
 Telephone: (916) 210-7895
 Facsimile: (916) 324-5567
*Attorneys for Complainant*

**BEFORE THE**
**DENTAL BOARD OF CALIFORNIA**
**DEPARTMENT OF CONSUMER AFFAIRS**
**STATE OF CALIFORNIA**

| | |
|---|---|
| In the Matter of the Second Amended Accusation Against: | Case Number 4402018002387 |
| | **SECOND AMENDED ACCUSATION** |
| **JEFFREY ALAN SULITZER, DMD**<br>271 EASTRIDGE DR.<br>WOODLAND, WA 98674-934 | |
| **Dental License Number 51841,** | |
| Respondent. | |

Complainant alleges:

## PARTIES

1.      Karen M. Fischer (Complainant) brings this Second Amended Accusation solely in her official capacity as the Executive Officer of the Dental Board of California (Board), Department of Consumer Affairs.

2.      On or about October 7, 2003, the Board issued Dental License number 51841 to Jeffrey Alan Sulitzer, DMD (Respondent).  The Dental License was in full force and effect at all times relevant to the charges brought herein and will expire on June 30, 2023, unless renewed.

//

1

## JURISDICTION

3.     This Second Amended Accusation is brought before the Dental Board of California (Board), Department of Consumer Affairs, under the authority of the following laws. All section references are to the Business and Professions Code (Code) unless otherwise indicated.

4.     Code section 118, subdivision (b), provides that the suspension, expiration, surrender or cancellation of a license shall not deprive the Board of jurisdiction to proceed with a disciplinary action during the period within which the license may be renewed, restored, reissued or reinstated.

5.     Code section 1670 states:

> Any licentiate may have his license revoked or suspended or be reprimanded or be placed on probation by the board for unprofessional conduct, or incompetence, or gross negligence, or repeated acts of negligence in his or her profession, or for the issuance of a license by mistake, or for any other cause applicable to the licentiate provided in this chapter. The proceedings under this article shall be conducted in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, and the board shall have all the powers granted therein.

6.     Code section 1807 states:

> A dental corporation shall not do or fail to do any act the doing of which or the failure to do which would constitute unprofessional conduct under any statute, rule or regulation now or hereafter in effect. In the conduct of its practice, it shall observe and be bound by such statutes, rules and regulations to the same extent as a person holding a license under Section 1634 of this code. The board shall have the same powers of suspension, revocation and discipline against a dental corporation as are now or hereafter authorized by Section 1670 of this code, or by any other similar statute against individual licensees, provided, however, that proceedings against a dental corporation shall be conducted in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, and the board shall have all the powers granted therein.

## STATUTORY PROVISIONS

7.     Code section 143.5, subdivision (a) states:

> No licensee who is regulated by a board, bureau, or program within the Department of Consumer Affairs, nor an entity or person acting as an authorized agent of a licensee, shall include or permit to be included a

2

provision in an agreement to settle a civil dispute, whether the agreement is made before or after the commencement of a civil action, that prohibits the other party in that dispute from contacting, filing a complaint with, or cooperating with the department, board, bureau, or program within the Department of Consumer Affairs that regulates the licensee or that requires the other party to withdraw a complaint from the department, board, bureau, or program within the Department of Consumer Affairs that regulates the licensee. A provision of that nature is void as against public policy, and any licensee who includes or permits to be included a provision of that nature in a settlement agreement is subject to disciplinary action by the board, bureau, or program.

8.    Code section 1625 states:

Dentistry is the diagnosis or treatment, by surgery or other method, of diseases and lesions and the correction of malpositions of the human teeth, alveolar process, gums, jaws, or associated structures; and such diagnosis or treatment may include all necessary related procedures as well as the use of drugs, anesthetic agents, and physical evaluation. Without limiting the foregoing, a person practices dentistry within the meaning of this chapter who does any one or more of the following:

(a) By card, circular, pamphlet, newspaper or in any other way advertises himself or represents himself to be a dentist.

(b) Performs, or offers to perform, an operation or diagnosis of any kind, or treats diseases or lesions of the human teeth, alveolar process, gums, jaws, or associated structures, or corrects malposed positions thereof.

(c) In any way indicates that he will perform by himself or his agents or servants any operation upon the human teeth, alveolar process, gums, jaws, or associated structures, or in any way indicates that he will construct, alter, repair, or sell any bridge, crown, denture or other prosthetic appliance or orthodontic appliance.

(d) Makes, or offers to make, an examination of, with the intent to perform or cause to be performed any operation on the human teeth, alveolar process, gums, jaws, or associated structures.

(e) Manages or conducts as manager, proprietor, conductor, lessor, or otherwise, a place where dental operations are performed.

9.    Code section 1626 states, in pertinent part:

It is unlawful for any person to engage in the practice of dentistry in the state, either privately or as an employee of a governmental agency or political subdivision, unless the person has a valid, unexpired license or special permit from the board.

(JEFFREY ALAN SULITZER, DMD) SECOND AMENDED ACCUSATION

The following practices, acts and operations, however, are exempt from the operation of this chapter: ...

(e) The construction, making, verification of shade taking, alteration or repairing of bridges, crowns, dentures, or other prosthetic appliances, or orthodontic appliances, when the casts or impressions for this work have been made or taken by a licensed dentist, but a written authorization signed by a licensed dentist shall accompany the order for the work or it shall be performed in the office of a licensed dentist under his or her supervision. The burden of proving written authorization or direct supervision is upon the person charged with the violation of this chapter.

It is unlawful for any person acting under the exemption of this subdivision to represent or hold out to the public in any manner that he or she will perform or render any of the services exempted by this subdivision that are rendered or performed under the provisions of this chapter by a licensed dentist, including the construction, making, alteration or repairing of dental prosthetic or orthodontic appliances.

10.    Code section 1657 states, in pertinent part:

(a) For the purposes of this section, the following definitions shall apply:

(1) "Mobile dental unit" means a self-contained facility, which may include a trailer or van, in which dentistry is practiced that may be moved, towed, or transported from one location to another…

(b) A mobile dental unit, or a dental practice that routinely uses portable dental units to provide treatment in nondental office locations, shall be registered and operated in accordance with regulations established by the board. These regulations shall not be designed to prevent or lessen competition in service areas. The regulations shall require the registrant to identify a licensed dentist responsible for the mobile dental unit or portable practice, and shall include, but shall not be limited to, requirements for availability of followup and emergency care, maintenance and availability of provider and patient records, and treatment information to be provided to patients and other appropriate parties. A mobile dental unit, or a dental practice using portable dental units, registered and operated in accordance with the board's regulations and that has paid the fees established by the board, including a mobile dental unit registered for the purpose specified in subdivision (e), shall otherwise be exempt from this article and Article 3.5 (commencing with Section 1658).

11.    Code section 1658 states, in pertinent part:

(a) When a licensee desires to have more than one place of practice, he or she shall, prior to the opening of the additional office, apply to the board, pay the fee required by this chapter, and receive permission in writing from

4

the board to have the additional place of practice.

"Place of practice" means any dental office where any act of dentistry is practiced as defined by Section 1625, and includes a place of practice in which the applicant holds any proprietary interest of any nature whatsoever, or in which he or she holds any right to participate in the management or control thereof. A dentist who is the lessor of a dental office shall not be deemed to hold a proprietary interest in that place of practice, unless he or she is entitled to participate in the management or control of the dentistry practiced there.

12.   Code section 1658.1 states:

Nothing in this chapter shall be construed to prohibit a licensed dentist from maintaining more than one dental office in this state if all of the following conditions are met:

(a) In addition to any existing legal responsibility or liability, a dentist maintaining more than one office shall assume legal responsibility and liability for the dental services rendered in each of the offices maintained by the dentist.

(b) A dentist maintaining more than one office shall ensure that each office is in compliance with the supervision requirements of this chapter.

(c) A dentist maintaining more than one office shall post, in an area which is likely to be seen by all patients who use the facility, a sign with the dentist's name, mailing address, telephone number, and dental license number.

13.   Code section 1680 states, in pertinent part:

Unprofessional conduct by a person licensed under this chapter is defined as, but is not limited to, any one of the following: ...

(c) The aiding or abetting of any unlicensed person to practice dentistry unlawfully...

(f) The use of any false, assumed, or fictitious name, either as an individual, firm, corporation, or otherwise, or any name other than the name under which he or she is licensed to practice, in advertising or in any other manner indicating that he or she is practicing or will practice dentistry, except that name as is specified in a valid permit issued pursuant to Section 1701.5...

(h) The making use by the licensee or any agent of the licensee of any advertising statements of a character tending to deceive or mislead the public...

(n) The violation of any of the provisions of this division.

5

(w) Use of fraud in the procurement of any license issued pursuant to this chapter…

(y) The aiding or abetting of a licensed dentist, dental assistant, registered dental assistant, registered dental assistant in extended functions, dental sedation assistant permitholder, orthodontic assistant permitholder, registered dental hygienist, registered dental hygienist in alternative practice, or registered dental hygienist in extended functions to practice dentistry in a negligent or incompetent manner…

(ae) The utilization by a licensed dentist of any person to perform the functions of any registered dental assistant, registered dental assistant in extended functions, dental sedation assistant permitholder, orthodontic assistant permitholder, registered dental hygienist, registered dental hygienist in alternative practice, or registered dental hygienist in extended functions who, at the time of initial employment, does not possess a current, valid license or permit to perform those functions. …

14.   Code section 1684.5 states, in pertinent part:

(a) In addition to other acts constituting unprofessional conduct under this chapter, it is unprofessional conduct for any dentist to perform or allow to be performed any treatment on a patient who is not a patient of record of that dentist. A dentist may, however, after conducting a preliminary oral examination, require or permit any dental auxiliary to perform procedures necessary for diagnostic purposes, provided that the procedures are permitted under the auxiliary's authorized scope of practice… .

(b) For purposes of this section, "patient of record" refers to a patient who has been examined, has had a medical and dental history completed and evaluated, and has had oral conditions diagnosed and a written plan developed by the licensed dentist.

(c) For purposes of this section, if dental treatment is provided to a patient by a registered dental assistant in extended functions, a registered dental hygienist, or a registered dental hygienist in alternative practice pursuant to the diagnosis and treatment plan authorized by a supervising dentist, at a location other than the dentist's practice location, it is the responsibility of the authorizing dentist that the patient or the patient's representative receive written notification that the care was provided at the direction of the authorizing dentist and that the notification include the authorizing dentist's name, practice location address, and telephone number. This provision shall not require patient notification for dental hygiene preventive services provided in public health programs as specified and authorized in Section 1911, or for dental hygiene care when provided as specified and authorized in Section 1926.

//

6

15.   Code section 1685 states:

In addition to other acts constituting unprofessional conduct under this chapter, it is unprofessional conduct for a person licensed under this chapter to require, either directly or through an office policy, or knowingly permit the delivery of dental care that discourages necessary treatment or permits clearly excessive treatment, incompetent treatment, grossly negligent treatment, repeated negligent acts, or unnecessary treatment, as determined by the standard of practice in the community.

16.   Code section 1741 states, in pertinent part:

(b) "Direct supervision" means supervision of dental procedures based on instructions given by a licensed dentist, who must be physically present in the treatment facility during the performance of those procedures.

(c) "General supervision" means supervision of dental procedures based on instructions given by a licensed dentist but not requiring the physical presence of the supervising dentist during the performance of those procedures.

17.   Code section 1701.5 states:

Any association or partnership or corporation or group of three or more dentists, engaging in practice under any name that would otherwise be in violation of Section 1701 may practice under this name if, and only if, the association, partnership, corporation or group holds an outstanding, unexpired, unsuspended, and unrevoked permit issued by the board under this section. On and after July 1, 1995, any individual dentist or pair of dentists engaging in the practice of dentistry under any name that would otherwise be in violation of Section 1701 may practice under that name if and only if the dentist or pair of dentists hold an outstanding, unexpired, unsuspended, and unrevoked permit issued by the board under this section. The board shall issue written permits authorizing the holder to use a name specified in the permit in connection with the holder's practice if, and only if, the board finds to its satisfaction that:

(a) The applicant or applicants are duly licensed dentists.

(b) The place or establishment, or the portion thereof, where the applicant or applicants practice, is owned or leased by the applicant or applicants, and the practice conducted at the place or establishment, or portion thereof, is wholly owned and entirely controlled by the applicant or applicants.

(c) The name that the applicant or applicants propose to operate contains at least one of the following designations: "dental group," "dental practice," or "dental office" and contains the family name of one or more of the past, present, or prospective associates, partners, shareholders, or members of

7

the group, and is in conformity with Section 651 and subdivisions (i) and (l) of Section 1680.

(d) All licensed persons practicing at the location designated in the application hold valid and outstanding licenses and that no charges of unprofessional conduct are pending against any persons practicing at that location.

Permits issued under this section by the board shall expire and become invalid unless renewed at the times and in the manner provided for the renewal of certificates issued under this chapter.

Any permits issued under this section may be revoked or suspended at any time that the board finds that any one of the requirements for original issuance of a permit is no longer being fulfilled by the holder to whom the permit was issued. Proceedings for revocation or suspension shall be governed by the Administrative Procedure Act.

In the event charges of unprofessional conduct are filed against the holder of a permit issued under this section, or a member of an association or partnership or a member of a group or corporation to whom a permit has been issued under this section, proceedings shall not be commenced for revocation or suspension of the permit until final determination of the charges of unprofessional conduct and unless the charges have resulted in revocation or suspension of license.

18.   Code section 1750 states:

(a) A dental assistant is an individual who, without a license, may perform basic supportive dental procedures, as authorized by Section 1750.1 and by regulations adopted by the board, under the supervision of a licensed dentist. "Basic supportive dental procedures" are those procedures that have technically elementary characteristics, are completely reversible, and are unlikely to precipitate potentially hazardous conditions for the patient being treated.

(b) The supervising licensed dentist shall be responsible for determining the competency of the dental assistant to perform the basic supportive dental procedures, as authorized by Section 1750.1.

(c) The employer of a dental assistant shall be responsible for ensuring that the dental assistant who has been in continuous employment for 120 days or more, has already successfully completed, or successfully completes, all of the following within a year of the date of employment:

(1) A board-approved two-hour course in the Dental Practice Act.

(2) A board-approved eight-hour course in infection control.

8

(3) A course in basic life support offered by an instructor approved by the American Red Cross or the American Heart Association, or any other course approved by the board as equivalent and that provides the student the opportunity to engage in hands-on simulated clinical scenarios.

(d) The employer of a dental assistant shall be responsible for ensuring that the dental assistant maintains certification in basic life support.

(e) This section shall become operative on January 1, 2010.

19.   Code section 1750.1 states, in pertinent part:

(b) A dental assistant may perform the following duties under the direct supervision of a supervising licensed dentist: …

(3) Take intraoral impressions for all nonprosthodontic appliances…

(8) Perform measurements for the purposes of orthodontic treatment.

20.   Code section 1753.5 states, in pertinent part:

(b) A registered dental assistant in extended functions licensed on or after January 1, 2010, is authorized to perform the following additional procedures under direct supervision and pursuant to the order, control, and full professional responsibility of a licensed dentist:

(1) Conduct preliminary evaluation of the patient's oral health, including, but not limited to, charting, intraoral and extra-oral evaluation of soft tissue, classifying occlusion, and myofunctional evaluation…

(c) All procedures required to be performed under direct supervision shall be checked and approved by the supervising licensed dentist prior to the patient's dismissal from the office.

21.   Code section 2290.5 states, in pertinent part:

(a) For purposes of this division, the following definitions shall apply: …

(3) "Health care provider" means either of the following:

(A) A person who is licensed under this division…

(6) "Telehealth" means the mode of delivering health care services and public health via information and communication technologies to facilitate the diagnosis, consultation, treatment, education, care management, and self-management of a patient's health care while the patient is at the originating site and the health care provider is at a distant site. Telehealth

9

facilitates patient self-management and caregiver support for patients and includes synchronous interactions and asynchronous store and forward transfers.

(b) Prior to the delivery of health care via telehealth, the health care provider initiating the use of telehealth shall inform the patient about the use of telehealth and obtain verbal or written consent from the patient for the use of telehealth as an acceptable mode of delivering health care services and public health. The consent shall be documented.

(c) Nothing in this section shall preclude a patient from receiving in-person health care delivery services during a specified course of health care and treatment after agreeing to receive services via telehealth.

(d) The failure of a health care provider to comply with this section shall constitute unprofessional conduct. Section 2314 shall not apply to this section.

(e) This section shall not be construed to alter the scope of practice of any health care provider or authorize the delivery of health care services in a setting, or in a manner, not otherwise authorized by law.

## **REGULATORY PROVISIONS**

22.    Title 16, California Code of Regulations ("CCR") section 1005, subsection (b)(3) states, "[a] copy of this regulation (i.e., pertaining to minimum standards for infection control) shall be posted in each dental office."

23.    Title 16, CCR section 1049 states:

(a) Definition. For purposes of Section 1657 of the code, a "mobile dental clinic" or "mobile dental unit" means any self-contained facility in which dentistry will be practiced which may be moved, towed, or transported from one location to another.

(b) Application for Permit. A licensed dentist who wishes to operate a mobile dental clinic shall apply to the board for a permit by providing evidence of compliance with the requirements of this section and paying the fee prescribed in Section 1021 for application for an additional office permit.

The board shall inform an applicant for a permit in writing within 7 days whether the application is complete and accepted for filing or is deficient and what specific information is required.

The board shall decide within 60 days after the filing of a completed application whether the applicant meets the requirements of a permit.

(JEFFREY ALAN SULITZER, DMD) SECOND AMENDED ACCUSATION

(c) Requirements.

(1) The applicant shall certify that:

(A) There is a written procedure for emergency follow-up care for patients treated in the mobile dental clinic and that such procedure includes arrangements for treatment in a dental facility which is permanently established in the area.

(B) The mobile dental clinic has communication facilities which will enable the operator thereof to contact necessary parties in the event of a medical or dental emergency.

(C) The mobile dental clinic conforms to all applicable federal, state and local laws, regulations and ordinances dealing with radiographic equipment, flammability, construction, sanitation and zoning and the applicant possesses all applicable county and city licenses or permits to operate the unit.

(D) The driver of the unit possesses a valid California driver's license.

(2) The applicant shall maintain an official business or mailing address of record which shall be filed with the board. The board shall be notified within 30 days of any change in the address of record. All written or printed documents available from or issued by the mobile dental clinic shall contain the official address of record for the mobile dental clinic.

(3) Each mobile dental clinic shall:

(A) Have ready access to a ramp or lift if services are provided to disabled persons.

(B) Have a properly functioning sterilization system.

(C) Have ready access to an adequate supply of potable water, including hot water.

(D) Have ready access to toilet facilities.

(E) Have a covered galvanized, stainless steel, or other noncorrosive metal container for deposit of refuse and waste materials.

(d) Transferability. A permit to operate a mobile dental clinic is not transferable.

(e) Renewal. A permit to operate a mobile dental clinic expires at the same time as the permit holder's dental license. The permit holder may apply for renewal and shall pay the fee set for renewal of an additional office permit.

11

24.    Title 16, CCR section 1055 states:

Nothing in the laws or rules relating to dental corporations alters the dentist's duties and responsibilities to and professional relationships with his patients. Nor do such laws or rules in any way impair the disciplinary powers of the board over its licentiates or impair any other law or rule pertaining to the standards of professional conduct of dentists.

25.    Title 16, CCR section 1057 states:

A dental corporation is subject to the additional office requirements of Article 3.5, Chapter 4 of Division 2 of the Code. A dental corporation which desires to have more than one place of practice shall, prior to opening any additional office, apply for and receive permission in writing from the board.

26.    Title 16, CCR section 1065 states:

(a) A licensed dentist engaged in the practice of dentistry shall provide notice to each patient of the fact that the dentist is licensed and regulated by the Board. The notice shall include the following statement and information:

NOTICE
Dentists are licensed and regulated
by the Dental Board of California
(877) 729-7789
www.dbc.ca.gov

(b) The notice required by this section shall be provided by prominently posting the notice in a conspicuous location accessible to public view on the premises where the dentist provides the licensed services, in which case the notice shall be in at least 48-point type font.

27.    Title 16, CCR section 1068 states:

All dentists utilizing the services of dental auxiliaries shall post a notice in a common area of the office which delineates duties and functions deemed by the board as delegable within stipulated settings and/or circumstances. Such notice shall be readily accessible to all individuals under supervision of the dentist.

## **COST RECOVERY**

28.    Section 125.3 of the Code provides, in pertinent part, that the Board may request the administrative law judge to direct a licentiate found to have committed a violation or violations of the licensing act to pay a sum not to exceed the reasonable costs of the investigation and

12

1    enforcement of the case, with failure of the licentiate to comply subjecting the license to not being

2    renewed or reinstated.  If a case settles, recovery of investigation and enforcement costs may be

3    included in a stipulated settlement.

4                                            **FACTUAL BACKGROUND**

5          29.  The timeframe relevant to the charges and allegations set forth herein includes the

6    period of April 13, 2017 until the date of the filing of this Second Amended Accusation.

7          30.  As alleged hereinabove, Jeffrey Sulitzer, DMD (Respondent) is a California licensed

8    dentist.  Respondent has formed a professional corporation and is registered with the California

9    Secretary of State as "Jeffrey Sulitzer, DMD, Professional Corporation" (hereinafter, "Sulitzer,

10   PC").  The Articles of Incorporation for Sulitzer, PC state that the purpose of the corporation is to

11   engage in the profession of dentistry.

12         31.  A Statement of Information that Respondent filed for Sulitzer, PC (dated August 2,

13   2018) states that the address for the professional corporation is 414 Union Street, 8th Floor,

14   Nashville, TN 37219 – the same address as the "Company" that is described below.

15         32.  Respondent held himself out as being the Chief Clinical Officer for an out-of-state

16   business consisting of a parent company and wholly owned subsidiaries that advertises, treatment

17   plans, fabricates, manufactures and sells custom-made clear orthodontic aligners directly to

18   patients (hereinafter, the "Company").

19         33.  The Company is owned and controlled by non-dentist persons and entities and is not

20   registered with the California Department of Managed Health Care as a health care service plan.

21   Nor does the Company possess a Knox-Keene Act license that would exempt it from the

22   Moscone-Knox Act requirements of ownership.

23         34.  To further its sale of orthodontic aligners, the Company, utilizing its trademarks and

24   trade dress, owns and/or operates scores of dental offices throughout the United States, including

25   over 20 offices in California.  The Company also furthers its sale of orthodontic aligners through

26   the internet and mobile dental units.

27         35.  The Company provides (and during the timeframe relevant to this Second Amended

28   Accusation provided) its aligners directly to patients utilizing one of two models, ostensibly using

                                                  13

1   a teledentistry platform. In the first model, after a patient completes an online dental self-

2   assessment, the patient is directed to order an at-home dental impression kit that the Company

3   sends to the patient. The Company then requests the patient to make their own dental impression

4   using the at-home dental impression kit and to return the resulting cast to the Company. The

5   Company then uses the cast to create a 3D computer image of the patient's dentition intended for

6   the purpose of orthodontic treatment planning and for the fabrication and manufacture of custom-

7   made orthodontic aligners for the patient.

8        36.  In the second model, the patient visits either a dental office or mobile dental unit

9   owned and/or operated by the Company. At these locations, a dental assistant obtains the patient's

10  medical history and signature on an informed consent form that describes the benefits and risks

11  pertaining to orthodontic treatment in general. This informed consent form also includes

12  provisions whereby the patient consents to the use of telehealth and purports to "release [the

13  Company] from liability for any claims by me or any third party in connection with my

14  participation or use of the invisible aligner treatment." Dental assistants also request the patient

15  to self-verify their own dental health by stating, in writing, that they have had a prior exam with a

16  licensed dentist who purportedly cleared the patient for the Company's orthodontic aligner

17  treatment. Once the patient completes the necessary forms, a dental assistant, using an iTero 3D

18  (or like) scanner, performs an intraoral dental scan that creates a 3D dental image for purposes of

19  orthodontic treatment planning and the fabrication and manufacture of custom-made orthodontic

20  aligners.

21       37.  In both models described above, the Company sends the 3D dental image to its own

22  facilities located in Costa Rica for orthodontic aligner treatment planning. Once the treatment

23  plan is completed, it is supposedly reviewed by a state-licensed dentist. Without first examining

24  the patient, the dentist either approves or denies the orthodontic aligner treatment plan. If

25  approved, the Company uses the 3D dental image of the patient's dentition to create a set of clear

26  dental aligners to treat the patient. The Company sends those aligners directly to the patient.

27       38.  In both models, patients do not interact with the dentists who reviewed their 3D

28  dental image. Nor do patients receive the name, address, or contact information of the dentists

14

1  who approve their treatment plan.

2      39.  In both models, dental or orthodontic follow-up appointments are not scheduled for

3  patients during their orthodontic treatment.  Instead, the patient is requested to photograph their

4  own dentition approximately every 90 days and to transmit those photographs to the Company so

5  that a dentist can review them.  If problems occur during treatment, the patient is referred to the

6  Company's customer service department and not to any particular licensed dentist.

7      40.  The Company claims that it does not itself practice dentistry.  Instead, the Company

8  purports to operate as an "oral care company" that provides only non-clinical dental support

9  organization (DSO) services to independent dental practices that desire to treat patients with mild

10  to moderate malocclusion remotely using the Company's clear aligner therapy.  These "Affiliated

11  Dental Practices" supposedly enter into a series of contracts with the Company for use of the

12  Company's DSO services which include, among other things, access to the Company's

13  teledentistry platform.  The Affiliated Dental Practices, in turn, contract with state-licensed

14  dentists and orthodontists, who are to actually treat patients.

15      41.  In practice, Sulitzer, PC is the Affiliated Dental Practice operating in and around

16  California.  Sulitzer, PC, in turn, contracts with other California-licensed dentists, who are to treat

17  patients using the Company's teledentistry platform and orthodontic aligners.  The dentists whom

18  Sulitzer, PC has engaged in this regard include, among others, Dr. GM, who resides in Colorado.

19      42.  In and around 2017 and 2018, Respondent, through Sulitzer, PC, began applying to

20  the Board for several Fictitious Name Permits (FNPs) utilizing the Company's name and

21  characterizing it as his own dental group.  With respect to each of these FNP applications,

22  Respondent stated, under penalty of perjury, that "[t]he dental practice at the location specified on

23  this application is wholly owned and entirely controlled by this corporation."  Respondent's

24  representations, however, were false; the FNPs were instead for dental offices that the Company

25  in fact owned and controlled, either entirely or in part.  Based on Respondent's representations,

26

27

28

(JEFFREY ALAN SULITZER, DMD) SECOND AMENDED ACCUSATION

the Board issued the following FNPs to Sulitzer, PC: FNP numbers 13995,[1] 13996,[2] 13997,[3] 13998,[4] 13999,[5] 14180,[6] 14181,[7] 14182[8] and 14209.[9]  Three of these FNPs were issued for the following dental offices:

(i)  FNP number 13995 for a dental office located at 1111 Broadway, Oakland, CA ("Oakland Office");

(ii)  FNP number 13996 for a dental office located at 655 Montgomery Street, San Francisco, CA ("San Francisco Office"); and,

(iii) FNP number 13999 for a dental office located at 1601 Vine Street, 6th Fl., Los Angeles, CA ("L.A. Office").

During the timeframe relevant to this Second Amended Accusation, these dental offices that Respondent claimed to wholly own and entirely control were in operation and utilized the orthodontic treatment models in the orthodontic treatment of patients described in the Factual Background section of this Second Amended Accusation.

43.  Further, in and around 2017 and 2018, Respondent, through Sulitzer, PC, began applying to the Board for several Additional Office Permits (AOPs).  With respect to each of the AOP applications, Respondent stated, under penalty of perjury, that he accepted legal responsibility and liability for dental services rendered in each dental office he maintained.  This representation, however, was contradicted by the full release language contained in the Company's consent forms that patients were requested to sign at the dental offices that Respondent claimed to wholly own and entirely control.

---

[1] Respondent, through his corporation, has since cancelled FNP number 13995, which had had an expiration date of June 30, 2019.
[2] Respondent, through his corporation, has since cancelled FNP number 13996, which had had an expiration date of June 30, 2021.
[3] FNP number 13997 expired on June 30, 2021.
[4] FNP number 13998 expired on June 30, 2021.
[5] FNP number 13999 expired on June 30, 2021.
[6] FNP number 14180 expired on June 30, 2021.
[7] Respondent, through his corporation, has since cancelled FNP number 14181, which had an expiration date of June 30, 2021.
[8] Respondent, through his corporation, has since cancelled FNP number 14182, which had had an expiration date of June 30, 2019.
[9] FNP number 14209 expired on June 30, 2021.

16

(JEFFREY ALAN SULITZER, DMD) SECOND AMENDED ACCUSATION

44.   Respondent also represented in the AOP applications that all dental offices he operated were in compliance with Code section 1658.1, and that in each office, there was posted in an area visible to patients a sign setting forth Respondent's name, mailing address, telephone number and dental license number.  These representations, as alleged in greater detail in paragraphs 47-49 below, were also false. Based on Respondent's representations, the Board issued the following AOPs to Sulitzer, PC: AOP numbers 79577,[10] 79646,[11] 79647,[12] 79648[13] and 79664.[14]  Respondent has since applied to the Board for several other FNPs and AOPs making these same misrepresentations.

## FIRST CAUSE FOR DISCIPLINE

### (Use of Fraud in the Procurement of Fictitious Name Permits and Additional Office Permits)

45.   Respondent, both individually and through his professional corporation, is subject to disciplinary action for unprofessional conduct under Code section 1680, subdivision (w), in that he used fraud in the procurement of permits issued pursuant to the Dental Practice Act, Code sections 1600, et seq.

46.   Specifically, and as alleged in greater detail above, when applying for FNPs for various dental offices located throughout California, Respondent represented under penalty of perjury that he wholly owned and entirely controlled the subject offices.  These representations were false.  The subject dental offices were in fact owned and controlled, either entirely or in part, by the Company.

47.  Further, when applying for AOPs for the various dental offices located throughout California, Respondent represented under penalty of perjury that:

---

[10] AOP number 79577 expired on June 30, 2021.

[11] Respondent, through his corporation, has since cancelled AOP number 79646, which had an expiration date of June 30, 2021.

[12] Respondent, through his corporation, has since cancelled AOP number 79647, which had an expiration date of June 30, 2019.

[13] Respondent, through his corporation, has since cancelled AOP number 79648, which had an expiration date of June 30, 2021.

[14] Respondent, through his corporation, has since cancelled AOP number 79664, which had an expiration date of June 30, 2021.

17

1    (i) He accepted legal responsibility and liability for dental services rendered in the

2    offices;

3    (ii) The offices were in compliance with section 1658.1 and all other applicable State

4    and Federal laws, including that the offices were in compliance with the supervision requirements

5    of the Dental Practice Act; and,

6    (iii) In the offices there was visibly posted in an area likely to be seen by all patients

7    using the facility a sign with Respondent's name, mailing address, telephone number, and dental

8    license number.

9    48.  Respondent's representations set forth in paragraph 47 were false.  The true facts

10   were that Respondent did not accept legal responsibility and liability for dental services rendered

11   in the dental offices.  Instead, patients presenting at the offices were requested to execute

12   informed consent forms in which it was stated:  "I release [the Company] from liability for any

13   claims by me or any third party in connection with my participation or use of the invisible aligner

14   treatment," tending to deceive patients into believing that they have no legal recourse for the

15   aligner treatment that Respondent was supposedly to render.

16   49.  Further, the San Francisco Office, Oakland Office, and L.A. Office were not in

17   compliance with section 1658.1 and all other applicable state and federal laws as Respondent had

18   affirmatively represented because:

19   (i) As alleged in greater detail below in paragraph 60, the offices failed to comply

20   with the supervision requirements of the Dental Practice Act in that dental assistants were

21   permitted to take without direct supervision health histories and intraoral 3D scan impressions of

22   patients' dentition for the purpose of orthodontic diagnosis and treatment planning, including for

23   the fabrication and manufacture of orthodontic aligners, in violation of Code section 1750.1,

24   subsections (b)(3) and (b)(8); and/or,

25   (ii) Respondent failed to post in the dental offices any:

26   (a) Signage as required by section 1658.1, subsection (c);

27   (b) Notice of Licensure as required by title 16, CCR section 1065;

28

(JEFFREY ALAN SULITZER, DMD) SECOND AMENDED ACCUSATION

1   (c)  Copy of title 16, CCR section 1005 (pertaining to minimum standards for

2   infection control) as required by title 16, CCR section 1005, subsection (b)(3); and/or,

3   (d)  Dental auxiliary duties as required by title 16, CCR section 1068.

4   **SECOND CAUSE FOR DISCIPLINE**

5   **(Illegal Use of False, Assumed or Fictitious Name)**

6   50.  Respondent, both individually and through his professional corporation, is subject to

7   disciplinary action for unprofessional conduct under Code section 1680, subsection (f), in that he

8   illegally used a false, assumed or fictitious name in the practice of dentistry prior to issuance of

9   any FNP by the Board as follows:

10   (i)  On or about December 7, 2017, Respondent was operating the San Francisco

11   Office using a fictitious name prior to issuance of any FNP by the Board for that particular

12   location as required by Code section 1701.5; and,

13   (ii)  On or about January 17, 2018, Respondent was operating the Oakland Office

14   using a fictitious name prior to issuance of any FNP by the Board for that particular location as

15   required by Code section 1701.5.

16   **THIRD CAUSE FOR DISCIPLINE**

17   **(Use of Advertisement Tending to Deceive or Mislead the Public)**

18   51.  Respondent, both individually and through his professional corporation, is subject to

19   disciplinary action for unprofessional conduct under Code section 1680, subsection (h), in that he

20   used advertising tending to deceive or mislead the public as follows.

21   52.  As alleged in greater detail above, Respondent applied for and obtained FNPs using the

22   Company's name and representing the subject dental offices for which the FNPs were being

23   sought as belonging to his own dental group.  Moreover, Respondent used in these offices,

24   whether by way of license or otherwise, the name, trademarks and trade dress belonging to and

25   associated with the Company.  Patients were also requested to complete and submit health history

26   and consent forms bearing the Company's name and trademarks and which did not include

27   Respondent's name.  Included in those forms was language whereby the patient agreed to waive

28   any liability to the Company for orthodontic aligner treatment.  Further, patients presenting at the

1   dental offices were provided with materials and products bearing the Company's name,

2   trademarks and trade dress.

3       53.  These circumstances tended to deceive or otherwise mislead the public into concluding

4   that they were presenting at the Company's business instead of Respondent's dental practice.

5       54.  Alternatively, since Respondent was holding himself out as being the owner of the

6   offices that the Company in fact owned and controlled, entirely or in part, patients were led to

7   believe that they were at Respondent's dental practice when in fact they were at the Company's

8   place of business.

9       55.  Alternatively, patients presenting at the dental offices were led to believe that

10  Respondent and the Company were one and the same when they are not.

11  **FOURTH CAUSE FOR DISCIPLINE**

12  **(Treatment of Patients Not of Record)**

13      56.  Respondent, both individually and through his professional corporation, is subject to

14  disciplinary action for unprofessional conduct under Code section 1684.5, in that he

15  performed or allowed to be performed treatment on patients that were not his patient of record as

16  follows.

17      57. As alleged in greater detail above, patients presented at dental offices that Respondent

18  claimed to own and control to obtain orthodontic aligner treatment.  At these dental offices,

19  patients were requested to self-verify their own dental health, following which dental assistants

20  utilized 3D scanners to generate digital scans of patients' dentition, intended for diagnosing tooth

21  misalignments, orthodontic treatment planning, and the fabrication of custom-made orthodontic

22  aligners.  However, neither Respondent nor any dentist working under him was present to

23  conduct any examination of the patient prior to orthodontic treatment or preliminary examination

24  prior to procedures being performed by dental assistants, as Code section 1684.5, subsections (a)

25  and (b) require.

26  //

27  //

28  //

(JEFFREY ALAN SULITZER, DMD) SECOND AMENDED ACCUSATION

**FIFTH CAUSE FOR DISCIPLINE**

**(Aiding and Abetting the Unlicensed Practice of Dentistry)**

58.  Respondent, both individually and through his professional corporation, is subject to disciplinary action for unprofessional conduct under Code section 1680, subsection (c), in that he aided and abetted the Company in the unlicensed practice of dentistry, as defined by Code section 1625.  The Company performed the unlicensed practice of dentistry as follows:

(i)   The Company practiced dentistry by performing, or offering to perform, orthodontic diagnosis and the treatment of malposed teeth, which is the practice of dentistry as defined by Code section 1625, subsection (b);

(ii)   The Company indicated that it would perform orthodontic treatment and construct, alter, repair, or sell orthodontic appliances, which is the practice of dentistry as defined by Code section 1625, subsection (c);

(iii)   The Company managed or conducted as manager, proprietor, conductor, lessor, or otherwise, places where dental procedures were performed, which is the practice of dentistry as defined by Code section 1625, subsection (e); and/or,

(iv)   The Company advertised, fabricated, manufactured and sold orthodontic appliances directly to consumers when the casts and/or impressions for the work had not been made or taken by any licensed dentist (Respondent or otherwise) and without any written authorization for the work by Respondent or any other dentist, which is the practice of dentistry as defined by Code section 1626, subsection (e).

59.  Respondent aided and abetted in this unlawful scheme in that he:

(i)  Held himself out as the dentist of record for the Company's various dental offices and mobile dental units in California;

(ii)  Falsely represented that he wholly owned and entirely controlled the subject dental offices and mobile dental units when he did not;

(iii)  Performed or otherwise permitted orthodontic treatment on persons who were not his patient of record; and/or,

(iv)  Allowed the construction of orthodontic appliances without any written

1  authorization for the work by Respondent or any dentist working under him.

2  ### SIXTH CAUSE FOR DISCIPLINE

3  **(Aiding and Abetting Dental Assistants to Practice Dentistry in an Unlawful and/or a
   Negligent or Incompetent Manner)**

4

5  60.  Respondent, both individually and through his professional corporation, is subject to

6  disciplinary action for unprofessional conduct under Code section 1680, subsections (d) and/or

7  (y), in that he aided and abetted dental assistants to practice dentistry in a negligent and/or

8  incompetent manner. Specifically, Respondent relied on non-registered dental assistants to

9  perform functions that required the direct supervision of a licensed dentist as follows:

10      (i)   Dental assistants took intraoral (digital) impressions for orthodontic appliances

11  without any direct supervision, as Code section 1750.1, subsection (b)(3) requires; and,

12      (ii)  Dental assistants performed preliminary measurements for the purpose of

13  orthodontic treatment (i.e., the digital 3D scanning of a patient's dentition) without any direct

14  supervision, as Code section 1750.1, subsection (b)(8) requires.

15  ### SEVENTH CAUSE FOR DISCIPLINE

16  **(Requiring or Permitting the Delivery of Dental Care that Discourages Necessary
   Treatment or Permits Clearly Excessive Treatment, Incompetent Treatment, Grossly

17  Negligent Treatment, Repeated Negligent Acts, or Unnecessary Treatment as Determined
   by the Standard of Practice in the Community)**

18

19  61.  Respondent, both individually and through his professional corporation, is subject to

20  disciplinary action for unprofessional conduct under Code section 1685, in that he required,

21  directly or through office policy, or otherwise permitted the delivery of dental care that

22  discouraged necessary treatment or permitted clearly excessive treatment, incompetent treatment,

23  grossly negligent treatment, repeated negligent acts, or unnecessary treatment, as determined by

24  the standard of practice in the community, as follows:

25      (i)   Respondent utilized dental assistants who were not directly supervised to obtain

26  health histories and perform intraoral 3D scans for the purpose of orthodontic diagnosis and

27  treatment planning and for the fabrication and manufacture of orthodontic appliances.

28

(JEFFREY ALAN SULITZER, DMD) SECOND AMENDED ACCUSATION

1  Respondent's general practice in this regard constituted gross negligence, repeated negligence

2  and/or incompetence;

3        (ii)    Respondent encouraged, provided, authorized and/or otherwise permitted the

4  treatment of patients who were not his patient of record and without the proper patient-dentist

5  relationship being established and proper orthodontic diagnostic records created.  Respondent's

6  general practice in this regard constituted gross negligence, repeated negligence and/or

7  incompetence;

8        (iii)    Respondent encouraged, provided, authorized and/or otherwise permitted

9  orthodontic aligner treatment to patients without first obtaining a proper health history and dental

10  history for the patient.  Respondent's general practice in this regard constituted gross negligence,

11  repeated negligence and/or incompetence;

12        (iv)    Respondent encouraged, provided, authorized and/or otherwise permitted

13  orthodontic aligner treatment to patients without first performing a full oral examination of the

14  patient including, *inter alia*, periodontal examination, oral cancer screening, and the taking proper

15  radiographs (e.g., full-mouth x-rays, panorex and/or cephalometric x-rays) so as to rule out health

16  or dental conditions that are contraindicated to orthodontic treatment (e.g., periodontitis,

17  shortened roots, root resorption, etc.). Respondent's general practice in this regard constituted

18  gross negligence, repeated negligence and/or incompetence;

19        (v)    Respondent encouraged, provided, authorized and/or otherwise permitted

20  orthodontic aligner treatment to patients without proper orthodontic records, cephalometric

21  analysis and/or tracing (photographs and digitally scanned models standing alone do not

22  constitute full orthodontic records sufficient to adequately diagnose a patient).  Respondent's

23  general practice in this regard constituted gross negligence, repeated negligence and/or

24  incompetence;

25        (vi)    Respondent encouraged, provided, authorized and/or otherwise permitted

26  orthodontic aligner treatment to patients whereby treatment plans entailing only the Company's

27  orthodontic aligners were presented without any alternative treatment options (including, for

28  example, extractions, surgery, other orthodontic approaches such as traditional braces, or no

treatment at all).  Respondent's general practice in this regard constituted gross negligence, repeated negligence and/or incompetence.  Further, Respondent's general practice in this regard tended to discourage necessary treatment or to otherwise encourage unnecessary treatment;

(vii)  Respondent encouraged, provided, authorized and/or otherwise permitted orthodontic aligner treatment to patients without first obtaining the patients' adequate informed consent.  Respondent's general practice in this regard constituted repeated negligence;

(viii) Respondent encouraged, provided, authorized and/or otherwise permitted orthodontic aligner treatment to patients without the proper follow up and/or monitoring of the orthodontic movement of teeth.  Respondent's general practice in this regard constituted gross negligence, repeated negligence and/or incompetence; and/or,

(ix)  Respondent encouraged, provided, authorized and/or otherwise permitted orthodontic aligner treatment to patients without final records so as to document case results. Respondent's general practice in this regard constituted gross negligence, repeated negligence and/or incompetence.

## EIGHTH CAUSE FOR DISCIPLINE

### (Violations of the Telehealth Statute)

62.   Respondent, both individually and through his professional corporation, is subject to disciplinary action for unprofessional conduct under Code section 2290.5, subsection (d), in that he violated the law pertaining to telehealth in the following respects:

(i)     Respondent delivered orthodontic treatment via the use of telehealth.  However, neither Respondent nor any licensed health care provider working under him obtained the patient's consent to the use of telehealth, contrary to the provisions of Code section 2290.5, subsection (b);

(ii)    In utilizing telehealth to deliver orthodontic treatment to patients, Respondent, contrary to the provisions of Code section 2290.5, subsection (e), altered the scope of practice for orthodontics by limiting the acts that an orthodontist is obligated to perform during orthodontic treatment in that Respondent:

(a) Encouraged, provided, authorized and/or otherwise permitted orthodontic

1   treatment on patients without the proper patient-dentist relationship being established, which

2   under Code section 1684.5, subsections (a) and (b) would include a preliminary examination,

3   proper evaluation of medical and dental history, diagnosis of oral conditions and written

4   treatment planning by a licensed dentist;

5           (b)  Encouraged, provided, authorized and/or otherwise permitted orthodontic

6   treatment on patients without proper orthodontic diagnostic records and/or treatment plans

7   (including alternatives);

8           (c)  Encouraged, provided, authorized and/or otherwise permitted orthodontic

9   treatment on patients without obtaining the patient's adequate informed consent;

10          (d)  Failed to provide direct supervision over dental assistants who performed

11   functions that require direct supervision; and/or,

12          (e)  Failed to adequately monitor the orthodontic movement of teeth; and/or,

13          (iii)  Respondent's treatment approach through telehealth prevented patients from

14   receiving in-person treatment, contrary to the provisions of Code section 2290.5, subsection (c),

15   and even prevented patients from being able to interact with their treating dentist at all, whether

16   remotely or otherwise.

### NINTH CAUSE FOR DISCIPLINE

#### (Operation of Non-Permitted Mobile Dental Unit)

19          63.  Respondent, both individually and by and through his professional corporation, is

20   subject to disciplinary action for unprofessional conduct under Code section 1680, subsection (n)

21   for violating Code section 1657, subsection (b), in that on or about on or about July 1, 2019, he

22   operated a mobile dental unit at the Arden Fair Mall in Sacramento, California when that mobile

23   dental unit was not registered with the Board in accordance with title 16, CCR section 1049.

### FURTHER CHARGES AND ALLEGATIONS CONCERNING PATIENT JV

25          64.  On or about January 28, 2018, patient JV contacted the Company online for purposes

26   of obtaining orthodontic treatment.  In so doing, JV expressed a chief complaint as follows: "My

27   front two teeth have been moving for years and causing me to hide from cameras.   I'd love to

28   have a straighter smile!"  JV also purchased one of the Company's "evaluation kits" (discussed

1   above) for use in determining whether JV was an appropriate candidate for Respondent and the

2   Company's orthodontic aligner treatment.

3       65.   The Company's treatment records for JV indicate that on or about January 29, 2018,

4   the Company shipped an evaluation kit to JV pursuant to Respondent's directives.

5       66.   On or about February 10, 2018, JV submitted to the Company various "selfie"

6   photographs that JV took of her dentition.  On or about February 12, 2020, Company

7   representative AB noted on Respondent's behalf that the photo assessment had been approved.

8   Thereafter, after several attempts, JV created "DIY" impressions that were satisfactory to make

9   aligners.

10      67.   On or about April 7, 2018, JV's case was submitted to Dr. GM, a California-licensed

11  dentist affiliated with the Company through a contract with Sulitzer, PC.  That same day, Dr. GM

12  noted that he had reviewed and approved a treatment plan for JV.  The Company's treatment

13  records for JV contain no entry evidencing that JV was evaluated or examined by any dentist of

14  record within the meaning of Code section 1684.5 or any other dentist prior to the approval of this

15  treatment plan.  Likewise, there was no notation of any x-rays having been taken and/or

16  evaluated, and there was no record of any periodontal evaluation or oral cancer screening having

17  been performed.

18      68.   Further, the Company's treatment records for JV contain no developed orthodontic

19  diagnosis or any treatment plan established to address JV's concerns.  Moreover, there was no

20  medical history or any informed consent obtained, including with respect to the risks, benefits and

21  alternatives for treatment, including no treatment at all.

22      69.   Although the Company's treatment records do not include any treatment plan, they do

23  include a simulated model labeled "[JV] meet your New Smile!"  This simulated model shows a

24  contraindicated treatment plan since it evidences the planning of a severe anterior open bite, an

25  undesired result that would only worsen JV's orthodontic condition and which Respondent and/or

26  GM's treatment unfortunately achieved.

27  //

28  //

(JEFFREY ALAN SULITZER, DMD) SECOND AMENDED ACCUSATION

70. On or about May 7, 2018, the Company shipped aligners to JV pursuant to Dr. GM's directives. However, JV found those aligners to be ill-fitting, and on or about May 24, 2018, the Company approved JV for an "MCC."[15]

71. On or about May 25, 2018, JV presented to an unknown office affiliated with Respondent and the Company for purposes of obtaining an "MCC" scan. At that time, a technician created a 3D scan of JV's dentition to be used in the modification of JV's treatment plan. The Company's treatment records for JV fail to identify either the location of the office in which these services occurred or the technician who performed the services or even why the services were performed. Nor do the records include the written notification that Code section 1684.5, subdivision (c) requires.

72. On or about May 26, 2018, the case was resubmitted to Dr. GM, and on or about May 27, 2018, Dr. GM approved a modified treatment plan for JV.

73. On or about May 30, 2018, the Company approved yet another "MCC" for JV, noting that "Customer needs new impressions for better fit of aligners and additional movement needed on 7, 8, 9, 23, 24, 252 (sic), 26, 27." Although an appointment for additional 3D scanning was scheduled for May 30, 2018, it appears that the appointment was cancelled and no new scan performed at that time.

74. Eventually, on or about June 27, 2018, the Company shipped new aligners to JV pursuant to Dr. GM's directives. JV found that these aligners were also ill-fitting, causing JV to raise additional concerns to the Company.

75. On or about July 6, 2018, "Emily," who held herself out as being "one of the licensed professionals here at [the Company]," addressed JV's concerns regarding the length of her treatment. In so doing, Emily represented that Dr. GM had approved JV for an additional three-

---

[15] It is unknown what "MCC" stands for. Based on subsequent events and Respondent's records, the Board assumes that "MCC" stands for "mid-course correction," or words to that effect. Indeed, it should be noted that Respondent's method of charting is difficult if not virtually impossible to follow due to the use of internal abbreviations with unknown meaning, the charting of only partial conversations between Company representatives and the patients, and the use of vague notes such as "scan completed," but without any indication as to where the scan was performed, by whom, or even why the scan was performed.

27

month treatment plan since he had determined that it would take only three months to correct JV's main concerns.

76.    JV, however, remained concerned because the aligners she received did not cover her entire dentition, leaving molars exposed.  On or about July 13, 2018, Emily represented to JV that these circumstances were acceptable, but that if JV desired aligners that fit over all teeth, additional 3D scanning would be required.

77.    As of October 2018, JV was still dissatisfied with her treatment.  On or about October 16, 2018, JV presented to an unknown office affiliated with Respondent and the Company for purposes of obtaining additional 3D scanning.  At that time, a technician took additional photographs and created a new 3D scan of JV's dentition to be used in the modification of JV's treatment plan.  The Company's treatment records for JV once again fail to identify either the location of the office in which these services occurred or the technician who performed these services or even why the services were performed.  Likewise, the records again fail to include the written notification that Code section 1684.5, subdivision (c) requires.

78.    On or about October 17, 2018, JV's case was resubmitted to Dr. GM, who approved a modified treatment plan for JV that same day.  On or about November 2, 2018, Dr. GM directed that new aligners be shipped to JV pursuant to the modified treatment plan.

79.    Meanwhile, JV had raised additional concerns regarding her treatment in that black triangles were forming between her teeth.  On or about October 24, 2018, a Company representative informed JV that remote aligner therapy could not be used to address those issues and that JV would have to contact a local dentist for corrective treatment following the completion of Respondent and/or GM's treatment.

80.    On or about November 6, 2018, JV presented to general treating dentist, Dr. JM, for routine care and treatment.  At that time, Dr. JM noted that JV's tooth number 18 was cracked and required restorative crown therapy.  Dr. JM also informed JV that the orthodontic treatment that JV was then receiving from Respondent might have contributed to the cracked tooth due to the force that was being applied to JV's posterior teeth.  On or about December 3, 2018, Dr. JM prepared JV's tooth number 18 for crown therapy; he placed the crown on or about February 8,

28

1   2019.  At that time, Respondent and/or GM's orthodontic treatment with JV remained ongoing.

2       81.    JV informed the Company regarding the circumstances of her cracked tooth and new

3   crown in early February 2019.  On or about February 11, 2019, JV once again presented to an

4   office affiliated with Respondent and the Company.  At that time, a technician created a new 3D

5   scan of JV's dentition to be used in the modification of JV's treatment plan and for the fabrication

6   of new aligners to accommodate JV's recently-placed crown.  The Company's treatment records

7   for JV once again fail to identify either the location of the office in which these services occurred

8   or the technician who performed these services or even why the services were performed.  Again,

9   the records failed to include the written notification that Code section 1684.5, subdivision (c)

10  requires.

11      82.    On or about February 22, 2019, JV's case was re-submitted to Dr. GM.  On or about

12  February 24, 2019, Dr. GM approved a modified treatment plan for JV, and on or about March

13  15, 2019, new aligners were shipped to JV per Dr. GM's directives.

14      83.    As of April 2019, JV remained dissatisfied with Respondent and/or GM's treatment

15  and was concerned by a severe 2 mm – 4 mm anterior open bite that had by that time developed

16  cuspid-to-cuspid, and the related pressure that was being applied to her posterior teeth.

17      84.    On or about April 23, 2019, JV consulted an orthodontist, Dr. ML, regarding her

18  concerns.  At that time, Dr. ML took x-rays and photographs, created 3D scanned imagery of

19  JV's dentition, and performed an examination and evaluation.  Dr. ML determined that JV would

20  require 10-18 months of corrective treatment entailing upper and lower Clear Correct aligners, at

21  a discounted cost of approximately $2,250.00.

22      85.    In or around early May 2019, JV contacted the Company via text message in an

23  attempt to speak with Dr. GM regarding the various concerns that JV had with Dr. GM and/or

24  Respondent's ongoing treatment.  In replying to JV's text messaging, Company representative

25  Jessica encouraged JV to speak with a member of the Company's dental team, but informed JV

26  that she would not be able to speak with Dr. GM directly.

27      86.    Thereafter, on or about May 2, 2019, Company representative Emily informed JV for

28  the first time that Respondent, Dr. GM and the Company's remote treatment approach was too

limited to address JV's orthodontic issues, which would require alternative treatment approaches to correct.

87.    During the period of on or about May 3, 2019 to on or about June 10, 2019, JV and Company representatives engaged in further communications. During those communications, JV specifically requested to speak with Dr. GM. Company representatives continued in their refusal to connect JV with Dr. GM and refused to disclose even Dr. GM's dental license number. At no time did Company representatives ever advise JV regarding Respondent's involvement in her care and treatment or relationship to Dr. GM, who treated patient JV through his contract with Respondent.

88.    During these communications, the Company also agreed to provide JV $1,387.50, representing a 75% refund of the monies JV had paid for Respondent and/or GM's treatment, but only on condition that JV return her unused aligners to the Company and sign a general release form releasing the Company and its affiliated dentists, including Respondent and GM, from any and all liability, whether known or unknown. The release form also required JV to keep any and all details concerning the release form and her transactions with the Company and its affiliated dentists, including Respondent and GM, strictly confidential. This included a covenant whereby JV would not communicate any disparaging or negative statements or opinions about the Company and its affiliated dentists, including Respondent and GM, in any manner whatsoever, whether to the press, on social media, to a licensing or regulatory agency, or otherwise. In this regard, the release form that the Company presented to JV on behalf of Respondent, GM and itself, included the following illegal provision:

> Releasor covenants and agrees that he/she shall keep strictly confidential and shall not make public, disseminate, release or otherwise reference, allude to, suggest to any person, agency or other entity, including but not limited to media or press, in any manner whatsoever, the terms or existence of this General Release or the facts underlying the Transaction. Releasor shall not post on social media any information or reviews regarding the Transaction or the terms or existence of this General Release, and shall take all steps necessary to delete or eliminate any such postings made prior to the date of this General Release. Without limiting any of the foregoing, Releasor further covenants and agrees that he/she will not make, publish, or communicate any statements or opinions that would disparage, create a

30

negative impression of, or in any way be harmful to the business or business reputation of SDC or its affiliates or their respective employees, officers, directors, products, or services. Releasor covenants and agrees that he/she has not filed any complaint with any local, state or federal agency or regulator (each, a "Complaint" and collectively, the "Complaints"), or, in the event that Releasor has filed any Complaint(s) prior to executing this Release, Releasor hereby agrees to withdraw any and all outstanding Complaints upon receipt of the Payment. Releasor further agrees that he/she will not file any future Complaints.

Further, the release form provided that any breach of the confidentiality provisions would entitle the Company to, *inter alia*, liquidated damages in the amount of $10,000 per violation, with jurisdiction and venue for any such claim residing in Davidson County, Tennessee, and governed by the laws of the State of Tennessee. JV declined this offer, including because she had already filed a complaint with the Board concerning Respondent and/or GM's treatment. In her complaint to the Board, JV expressed a desire to "notify and hold [Dr. GM] responsible for his treatment via [the Company] so as to not harm any more people."

## **TENTH CAUSE FOR DISCIPLINE**

### **(Gross Negligence)**

89.   Complainant incorporates herein by reference paragraphs 64-88 above as if set forth in full.

90.   Respondent is subject to disciplinary action for unprofessional conduct under Code sections 1670 and/or 1685 in that he committed acts of gross negligence during his care and treatment of patient JV as follows:

91.   As alleged in greater detail above, Respondent provided or otherwise permitted the delivery of orthodontic treatment to JV without having first obtained and/or created adequate pre-treatment orthodontic diagnostic records, including proper medical history, the taking of a full oral examination of the patient (including periodontal evaluation and oral cancer screening), and the taking and study of proper radiographs. Respondent also failed to make and record a complete and accurate diagnosis for JV. Further, Respondent failed to note and record any treatment plans that addressed the total diagnoses for JV, and JV's chief complaint and treatment goals.

31

## ELEVENTH CAUSE FOR DISCIPLINE

### (Repeated Acts of Negligence)

92.   Complainant incorporates herein by reference paragraphs 64-88 above as if set forth in full.

93.   Respondent is subject to disciplinary action for unprofessional conduct under Code sections 1670 and/or 1685 in that he committed repeated acts of negligence during his care and treatment of patient JV or otherwise permitted others (i.e., Dr. GM) to do so.  In addition to committing those repeated acts of gross negligence set forth in paragraphs 89-90 above, each of which are incorporated herein by reference, Respondent committed or otherwise permitted the following negligent acts:

(i)   Respondent failed to ensure that the dental technicians who performed services (e.g., the taking of dental scans) for him and/or Dr. GM during the care and treatment of JV performed those services with proper supervision, authorization and/or written notification; and/or,

(ii)   Respondent failed to ensure that dental technicians performing services for him and/or Dr. GM during the care and treatment of patient JV properly identified themselves in the Company's dental records for JV, in violation of Code section 1683, subdivision (a).

## TWELFTH CAUSE FOR DISCIPLINE

### (Treatment of Patient Not of Record)

94.   Complainant incorporates herein by reference paragraphs 64-88 above as if set forth in full.

95.   Respondent is subject to disciplinary action for unprofessional conduct under Code sections 1684.5, subdivision (a) and/or 1685 in that he performed or otherwise permitted treatment on patient JV when JV was not a patient of record of either Respondent or Dr. GM, as defined by Code section 1684.5, subdivision (b).

## THIRTEENTH CAUSE FOR DISCIPLINE

### (Violations of the Telehealth Statute)

96.   Complainant incorporates herein by reference paragraphs 64-88 above as if set forth in full.

(JEFFREY ALAN SULITZER, DMD) SECOND AMENDED ACCUSATION

1    97.   Respondent is subject to disciplinary action for unprofessional conduct under Code

2    sections 1685 and/or 2290.5, subsection (d), in that he violated the law pertaining to telehealth or

3    otherwise permitted another licensed person (Dr. GM) to do so as follows:

4    98.   In utilizing telehealth to deliver orthodontic treatment to patient JV, Respondent,

5    contrary to the provisions of Code section 2290.5, subdivisions (c), (e) and/or (g), altered the

6    scope and standards of practice for orthodontics by limiting the acts that an orthodontist is

7    obligated to perform during orthodontic treatment in that Respondent:

8    (i) Treated or otherwise permitted the treatment of patient JV without the proper

9    patient-dentist relationship having been established, as alleged hereinabove;

10    (ii)   Treated or otherwise permitted the treatment of patient JV without proper

11    orthodontic diagnostic records (including radiographs) and/or comprehensive treatment plans

12    (including alternative treatment plans), as alleged hereinabove;

13    (iii)   Treated or otherwise permitted the treatment of patient JV without having

14    obtained JV's adequate informed consent to treatment; and/or,

15    (iv)   Failed to follow the requirements of adequate, reasonable and requested patient

16    communication when he failed to make himself available to patient JV so that the patient could

17    discuss treatment concerns with either him and/or Dr. GM.  Patient JV also requested her dental

18    records, which request was denied.

19    **FOURTEENTH CAUSE FOR DISCIPLINE**

20    **(Aiding and Abetting Violations)**

21    99.   Complainant incorporates herein by reference paragraphs 64-88 above as if set forth in

22    full.

23    100.   Respondent is subject to disciplinary action for unprofessional conduct under Code

24    section 1680, subdivisions (d) and/or (y), in that he aided and abetted a licensed person (Dr. GM)

25    to practice dentistry unlawfully and/or in a negligent or incompetent manner as alleged above in

26    paragraphs 64-98.

27    **FIFTEENTH CAUSE FOR DISCIPLINE**

28    **(Use of Illegal Release Agreement)**

33

1      101.   Complainant incorporates herein by reference paragraphs 64-88 above as if set forth

2 in full.

3      102.   Respondent is subject to disciplinary action for unprofessional conduct under Code

4 sections 143.5, subdivision (a) and 1670, in that he included, or permitted to be included, a

5 provision in an agreement to settle a civil dispute that sought to prohibit the other party (*i.e.*,

6 patient JV) from contacting, filing a complaint with, or cooperating with the Board, as set forth in

7 greater detail in paragraph 88 above.

8 **SIXTEENTH CAUSE FOR DISCIPLINE**

9 **(Unprofessional Conduct)**

10      103.   Respondent is subject to disciplinary action under Code section 1670 in that he

11 committed acts of unprofessional conduct, as set forth above in paragraphs 63-102.

12 **PRAYER**

13      WHEREFORE, Complainant requests that a hearing be held on the matters herein alleged,

14 and that following the hearing, the Dental Board of California issue a decision:

15      1.    Revoking or suspending Dental License number 51841, issued to Jeffrey Alan

16 Sulitzer, DMD;

17      2.    Ordering Jeffrey Alan Sulitzer, DMD to pay the Dental Board of California the

18 reasonable costs of the investigation and enforcement of this case, and, if placed on probation, the

19 costs of probation monitoring; and,

20      3.    Taking such other and further action as deemed necessary and proper.

21

22 DATED: _____9/1/21_____          *Karen M. Fischer*

23                              KAREN M. FISCHER
                             Executive Officer

24                              Dental Board of California
                             Department of Consumer Affairs

25                              State of California
                             *Complainant*

26 SA2019102700

27 Second Amended Accusation.2.docx

28

34

# EXHIBIT 3

 **in**     Jeffrey Sulitzer, DMD     



# Jeffrey Sulitzer, DMD

Chief Clinical Officer at SmileDirectClub

Woodland, Washington, United States · 500+ connections

**Join to Connect**

 **SmileDirectClub**

 **Temple Universty School of Dentistry**

---

# Experience

 **Chief Clinical Officer at SmileDirectClub**
SmileDirectClub

Jan 2017 - Present · 5 years 2 months

Greater Nashville Area, TN

Responsible for the clinical leadership of a direct to consumer, orthodontic aligner therapy, teledentistry platform. Company operates in all 50 states supported by an affiliated doctor network of over 225 state licensed dentists and orthodontists. The service company supplies the marketing, tele-dentistry platform, lab services, etc. in support of the affiliated doctors in treating their patients from initial placement of

**Join and learn more about Jeffrey**     ( Sign in )     Join now     ✕



Jeffrey Sulitzer, DMD



Jul 2013 - Nov 2016 · 3 years 5 months

Vancouver, Washington

InterDent
Interim CEO 5/2016 - 11/2016
Chief Clinical Officer 7/2013 – 5/2016

Responsible for the clinical leadership of all clinical staff comprised of over 500 dentists, 275 hygienists, and other professional staff for approximately 200 dental offices in 8 states at the C suite level. Responsibilities include the following:

Clinical Support of Interdent Operations
Clinical Leadership
Provider Engagement
Quality of Care
Practice Management

### Director, Healthcare

Cognizant Technology Solutions

Mar 2011 - Jul 2013 · 2 years 5 months

Responsibilities include enterprise program management, business process improvements, ACO development, dental and medical provider and network management, medical/dental care management and developing business strategies through consulting for leading healthcare payers and providers. Consulting services support provider and network management, medical and care management, ICD-10 Assessments and Remediation, ACO and Medical Home development, claims and customer service process improvements and...

Show more

### Vice President Network Integration

Regal/Lakeside Medical Group

Jul 2009 - Mar 2011 · 1 year 9 months

Recruited by Regal Medical Group to assist in the growth of profitable medical membership in the Southern California market. The membership for Regal/Lakeside was approximately 300,000 members. The job focus was on physician

**Join and learn more about Jeffrey**

Sign in

Join now

✕

 

Jeffrey Sulitzer, DMD

Show more

### Director in Healthcare Services

Regence BlueCross BlueShield

2006 - 2009 · 3 years

Director in healthcare services responsible for helping the company expand its focus and competencies on the health care services and medical management side of the business. Regence delivered benefits to over 3 million members in several different markets, including Oregon, Washington, Utah and Idaho:
- Managed Primary and Specialists Physicians and Dentists
- Developed disease management programs relating to the oral health – general health link for Regence and its customers, both...

Show more

### General Manager/Dental Leader

Anthem BlueCross BlueShield

2003 - 2005 · 2 years

Executive Director – General Manager responsible for the turnaround and general management of a specialty business with membership of approximately 1.7 million members, with annual revenue of $150 million. Responsibilities included operations (claims, customer service, enrollment and billing), sales and marketing support, provider relations, product development, auditing and compliance, and data management:
- Lead sales presentations for national accounts and middle market...

Show more

## Education

### Temple Universty School of Dentistry

Doctor of Dental Medicine · Dentistry

1981 - 1985

## Join and learn more about Jeffrey

( Sign in )    Join now    ✕

Case 3:22-cv-00095-WHO Document 23-1 Filed 02/22/23 Page 49 of 52

 Jeffrey Sulitzer, DMD



## Publications

### A New Payer Model For Medical Management Execution

April 15, 2013

To combat rising costs and inefficient use of resources, payers can streamline care management through medical management delivered as a services

## Groups

### Managed Care Connections

-

### Dentist Network

-

### America's Physician Groups

-

### Professional Speaker, Writers & Practice Management Consultants in Dentistry

-

### Dental benefits Industry group hosted by National Association of Dental Plans

-

### Association of Dental Support Organizations (ADSO)

-

Show 4 more groups

**Join and learn more about Jeffrey**  Sign in  Join now  ✕

Jeffrey Sulitzer, DMD Chief Clinical Officer at SmileDirectClub | LinkedIn



Jeffrey Sulitzer, DMD



See who you know in common

Get introduced

Contact Jeffrey directly

**Join to view full profile**

# People also viewed



**Cheryl DeSantis**

Chief People & Diversity Officer at SmileDirectClub | Smile With Us! Board Member: SDC Foundation and Nashville Downtown Partnership

Nashville Metropolitan Area



**Danielle White**

Director, Project Management at SmileDirectClub

Nashville Metropolitan Area



**Loomie Phasadavong**

Product Manager @ SmileDirectClub

Nashville Metropolitan Area



**Josh Chapman**

Chief Global Brand Officer at SmileDirectClub

United States



**John Owen**

Operations and Logistics Manager

Nashville, TN



**Edison Black**

Senior Manager of Club Member Experience

Nashville Metropolitan Area

**Hunter Collins**

Dentist at Collins and Montz Dentistry

Satellite Beach, FL

## Join and learn more about Jeffrey

Sign in

Join now



Jeffrey Sulitzer, DMD



Growth Strategist for MedTech

Greater Boston

**Tracey Duff, SPHR, GPHR**

Sr. Director, International People and Development at SmileDirectClub

Nashville, TN

Show more profiles

# Add new skills with these courses

**Presenting to Senior Executives**

**Executive Leadership**

**Project Management Foundations: Lessons Learned**

See all courses

## Jeffrey's public profile badge

Include this LinkedIn profile on other websites

---

**Jeffrey Sulitzer, DMD**

Chief Clinical Officer at SmileDirectClub

Chief Clinical Officer at SmileDirectClub at SmileDirectClub

Temple Universty School of Dentistry

View profile

---

View profile badges

**Join and learn more about Jeffrey**　　　Sign in　　Join now　　✕

    Jeffrey Sulitzer, DMD

| Privacy Policy | Cookie Policy |
| --- | --- |
| Copyright Policy | Brand Policy |
| Guest Controls | Community Guidelines |
| Language | |

Join and learn more about Jeffrey        Sign in        Join now