UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARNOLD NAVARRO,
Plaintiff,

v.

SMILEDIRECTCLUB, INC., et al.,
Defendants.

Case No. 22-cv-00095-WHO

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION UNDER L.R. 7-11 TO FILE SUPPLEMENTAL BRIEFS, DENYING PLAINTIFF'S MOTION TO REMAND, AND ORDERING DEFENDANTS TO PROVIDE SUPPLEMENTAL EVIDENCE TO SUPPORT THEIR MOTION TO COMPEL**

Arnold Navarro, the plaintiff in this putative class action, alleges that SmileDirectClub, Inc., SmileDirectClub, LLC, Jeffrey Sulitzer, and Jeffrey Sulitzer, D.M.D., P.C. (collectively "SDC"), engage in the unauthorized practice of dentistry in violation of California law. Both parties have motions pending: Navarro seeks to amend the complaint and to remand this action back to the Superior Court of the State of California for the County of Alameda for lack of subject-matter jurisdiction, and SDC moves to compel arbitration. SDC contends that when Navarro made an SDC account, he assented to SDC's Informed Consent and Terms & SmilePay Conditions, which require arbitration of his claims.

The Class Action Fairness Act of 2005 ("CAFA") confers me with subject-matter jurisdiction, and no exceptions apply. I GRANT Navarro's motion to amend and DENY the motion to remand. I also find that although SDC has provided some evidence regarding its arbitration agreement, it has not sufficiently described the appearance of its clickwrap agreement on April 23, 2020, the date in which Navarro allegedly assented to SDC's terms and conditions.

As a result, I ORDER SDC to file a declaration under oath with evidence that establishes: (1) the design and appearance of the clickwrap agreement on April 23, 2020, the date Navarro allegedly assented to the agreement, and (2) the circumstances under which Navarro received and allegedly assented to the Addendum to the Retail Installment Contract. *See* Dkt. 23-2. SDC shall file such evidence by May 6, 2022. Should Navarro wish to respond to SDC's evidence, he may file a declaration with supporting evidence by May 20, 2022. I will then rule on SDC's motion to compel arbitration in due course following the submission of the supplemental evidence.

**FACTUAL BACKGROUND**

Navarro filed a complaint in the Superior Court of the State of California for the County of Alameda on behalf of himself and a class of California residents on December 3, 2021, alleging that SDC engages in the unauthorized practice of dentistry. First Amended Complaint ("FAC") [Dkt. 28] ¶ 1. He claims that, among other things, SDC failed to comply with consumer protection licensing requirements, negligently provided dental care, and made misleading and false representations to consumers about the scope of the dental services that SDC could lawfully provide. *Id.* ¶¶ 1, 10–12, 60–61, 74–75, 83. He has pleaded various causes of action against SDC, including negligence, breach of fiduciary duty, fraudulent inducement, violation of California's Consumer Legal Remedies Act, and violation of California's Unfair Competition Law. *Id.* ¶¶ 32–110.

SDC characterizes itself as a "teledentistry platform" that connects consumers like Navarro with orthodontic treatment. SDC's Motion to Compel Arbitration ("MTC") [Dkt. 18] at 3. It claims that its business model facilitates access to orthodontic treatment and allows consumers to straighten their teeth via clear aligners without the hassle and cost of in-person appointments. *Id.* Consumers who are interested in SDC's dental services may request a doctor prescribed impression kit from SDC's website, visit a SDC retail location (known as a SmileShop), or visit the office of a dentist or orthodontist that participates in SDC's Partner Network. *Id.* All three options require consumers to register and create an SDC account online before they can access any of SDC's products or services. *Id.* at 4.

In April of 2020, Navarro visited SDC's website and reportedly created an online account. *Id.* at 4–5. According to SDC, as part of the account creation process, and before Navarro could finalize his registration as an SDC clear aligner candidate, he was required to affirmatively check a clickwrap checkbox in which he agreed to SDC's Informed Consent, Terms & SmilePay Conditions ("TOS"). *Id.* at 4. The checkbox is not pre-checked, and the full TOS are presented as hyperlinks. *Id.* at 5. *Id.* When the hyperlinks are clicked, the consumer is taken to another screen that displays the complete text of each of the policies. *Id.* Consumers have the option to read, download, and/or print the policies. *Id.*

SDC has also explained that its servers, which maintain an electronic file for each customer, log the customer's transactions and interactions. *Id.* These servers also log a customer's electronic assent to the TOS. *Id.* In support of its motion to compel arbitration, SDC provided evidence purporting to show that Navarro accepted SDC's TOS on April 23, 2020. *Id.*; Declaration of Jeffrey Skinner ("Skinner Decl.") [Dkt. 20] ¶¶ 14–27.

**PROCEDURAL BACKGROUND**

On January 6, 2022, SDC removed this case on the bases of diversity and CAFA. *See* 28 U.S.C. §§ 1332(a), (d); Not. of Removal [Dkt. 1] ¶¶ 6, 20. On February 7, 2022, Navarro moved to remand the matter back to Alameda Superior Court based on a purported lack of jurisdiction. Mot. to Remand [Dkt. No. 22]. That same day, SDC filed its motion to compel arbitration. MTC [Dkt. 18]. In the course of the remand briefing, Navarro filed the FAC under Rule 15(a)(1) to add Sulitzer's professional corporation, Jeffrey Sulitzer, D.M.D., P.C. ("Sulitzer P.C.") as a defendant. FAC ¶ 4. Navarro's reply brief, which he filed on the same day as the FAC, includes new arguments regarding Sulitzer P.C. in support of remand. *See* Reply [Dkt. 26] at 3–4. In light of these new arguments, SDC then filed an unopposed motion under Local Rule 7-11 for leave to file supplemental briefs. Mot. for Leave to File Supp. Briefs [Dkt. 39]. Both parties provided supplemental briefing regarding whether Sulitzer P.C. could properly be joined as a defendant.



United States District Court
Northern District of California

*See id.* Ex. A, Ex. B. On the same day that I held a hearing regarding the pending motions to remand and compel arbitration, Navarro filed a motion to amend the complaint to join Sulitzer P.C. in the event that I did not permit him to amend the complaint as of right under Rule 15(a)(1). Mot. to Amend [Dkt. 44] at 2.

**LEGAL STANDARD**

**I. MOTION FOR LEAVE TO AMEND**

Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts in this district have recognized, however, that this liberal approach to amendment "does not apply when a plaintiff amends her complaint after removal to add a diversity destroying defendant." *Greer v. Lockheed Martin,* No. 10–cv–01704–JF, 2010 WL 3168408, at *4 (N.D. Cal. Aug. 10, 2010) (quoting *Chan v. Bucephalus Alternative Energy Grp., LLC*, No. C 08-04537-JW, 2009 WL 1108744, at *3 (N.D. Cal. Apr. 24, 2009)); *see also San Jose Neurospine v. Cigna Health & Life Ins. Co.*, No. 16–cv–05061-LHK, 2016 WL 7242139, at *6 (N.D. Cal. Dec. 15, 2016). Accordingly, when a plaintiff seeks to amend his complaint after removal to add a diversity-destroying defendant, courts in this district analyze the proposed amendment under 28 U.S.C. § 1447(e). *San Jose Neurospine*, 2016 WL 7242139, at *6-7.

Section 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand to the State court." 28 U.S.C. § 1447(e). Factors relevant to determining whether to allow joinder under section 1447(e) include: (1) whether the new defendant would be joined under Federal Rule of Civil Procedure 19(a) as "needed for just adjudication;" (2) whether the statute of limitations would bar the filing of a new action against the new defendant in state court; (3) whether there has been an unexplained delay in seeking to join the new defendant; (4) whether joinder is intended solely to defeat federal jurisdiction, (5) whether

the claims against the defendant appears valid, and (6) whether denial of joinder would prejudice the plaintiff. *Donald v. Xanitos, Inc.*, No. 14–cv–05416-WHO, 2015 WL 1774870, at *2 (N.D. Cal. Apr. 17, 2015). Any of the factors might prove decisive, and none is an absolutely necessary condition for joinder. *Graunstadt v. USS-Posco Indus.*, No. C 10-03225-SI, 2010 WL 3910145, at *2 (N.D. Cal. Oct. 5, 2010).

## II. MOTION TO REMAND

A suit may be removed from state court to federal court only if the federal court would have had subject matter jurisdiction over the case. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). If it appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court. 28 U.S.C. § 1447(c).

## III. MOTION TO COMPEL ARBITRATION

The parties do not dispute that the Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq.* Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks and citation omitted). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## DISCUSSION

### I. MOTION TO AMEND THE COMPLAINT

The parties disagree whether Navarro could permissibly file the FAC as of right under Rule 15(a)(1). Navarro argues that since SDC's motion to compel arbitration does not constitute a "responsive pleading" within the meaning of Rule 15(a)(1)(B), nor is it a motion under Rule 12, he could amend as a matter of course pursuant to the plain language of the Rule. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required, [within] 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."); Pl. Supp. Br. [Dkt. 39-4] at 2–3. SDC counters that its motion to compel arbitration does constitute a "responsive pleading" within the meaning of Rule 15 and that the FAC needed to be filed within 21 days of their motion. Defs.' Supp. Br. [Dkt. 39-1] at 2–3. This distinction matters for Rule 15(a)(1) purposes because SDC moved to compel arbitration on February 7, 2022, and Navarro filed the FAC on March 14, 2022, which is outside of the 21-day grace period allowed for under Rule 15(a)(1)(B).

Courts within the Ninth Circuit have reached different decisions concerning whether a motion to compel arbitration constitutes a "responsive pleading" that implicates a plaintiff's right to amend under Rule 15(a)(1). *See, e.g.*, *Lee v. Postmates Inc.*, No. 18–cv–03421-JCS, 2018 WL 4961802, at *10–11 (N.D. Cal. Oct. 15, 2018) (collecting and describing various district court opinions reaching different outcomes). Because I ultimately grant Navarro leave to amend under Rule 15(a)(2), I will follow the example of the Hon. Joseph C. Spero in *Postmates* and decline to resolve whether Navarro is entitled to file the FAC as of right under Rule 15(a)(1)(B).

Navarro's motion to amend is GRANTED under Rule 15(a)(2). On April 13, 2022, he belatedly moved for leave to amend in the event that I did not accept the FAC as of right under Rule 15(a)(1). Dkt. 44. SDC argues that because joinder of Sulitzer P.C. will eliminate diversity

jurisdiction, the FAC should be analyzed under 28 U.S.C. § 1447(e), not Rule 15. Defs.' Supp. Br. at 3. But as discussed below in Section II, the addition of Sulitzer P.C. will not destroy federal jurisdiction because CAFA provides an independent source of jurisdiction. Accordingly, Rule 15, not section 1447(e), guides my analysis of Navarro's motion to amend. Under Rule 15(a)(2)'s liberal approach, leave to amend may be denied on the grounds of bad faith, undue delay, prejudice to the opposing party, or futility of the proposed amendment. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). None of those circumstances are present here.

While the analyses under Rule 15(a)(2) and section 1447(e) are distinct, the reasons to allow amendment apply with equal force to both. There has been no undue delay in filing the FAC, and there is no prejudice to SDC in the addition of Sulitzer P.C. This action was initially filed on December 3, 2021, removed to federal court on January 6, 2022, and the FAC was filed on March 14, 2022. Mot. for Leave to File Supp. Briefs at 1. The fewer-than-four-month delay between filing and proposed joinder supports amendment. *See, e.g.*, *Donald*, 2015 WL 1774870, at *3 (N.D. Cal. Apr. 17, 2015) (no undue delay where there were fewer than four months between filing and proposed joinder); *Yang v. Swissport USA, Inc.*, No. C 09-03823 SI, 2010 WL 2680800, at *4, 6 (N.D. Cal. July 6, 2010) (no undue delay where plaintiff sought joinder nine months after removal). And the case is in its early stages: aside from Navarro's motion to remand and SDC's motion to compel arbitration, there has been little motion practice, SDC has not yet answered, and discovery has not begun.

Navarro also does not seek to add Sulitzer P.C. in bad faith or solely to defeat federal jurisdiction. He pleaded that Jeffrey Sulitzer "is a licensed dentist practicing dentistry in California through [Sulitzer P.C.]" FAC ¶ 4; *see also* Pl. Supp. Br. at 5 (asserting that Sulitzer P.C. "is the entity through which Jeffrey Sulitzer operates SDC"). Navarro's claims broadly flow from SDC's operation of an enterprise purportedly engaging in the unauthorized practice of

dentistry. FAC ¶ 1. I conclude that Sulitzer P.C.—as the entity through which Jeffrey Sulitzer engages in the practice of dentistry in California—appears sufficiently related to Navarro's claims regarding SDC's unauthorized practice of dentistry to support joinder under section 1447(e) or amendment under Rule 15.

And even if Navarro seeks to add Sulitzer P.C. in part to defeat federal jurisdiction, "[t]he mere preference for one forum over another does not weigh in the section 1447(e) analysis." *See Dhawan v. Broadway Partners*, No. 13-cv-00336 PJH, 2013 WL 1615854, at *2 (N.D. Cal. Apr. 15, 2013); *Donald*, 2015 WL 1774870, at *3. Rather, "the key question is whether [the new defendant] is a sham defendant, added *solely* to defeat diversity jurisdiction." *Dhawan*, 2013 WL 1615854, at *2 (emphasis in original). While Navarro could have provided more detailed allegations regarding Sulitzer P.C.'s role in the alleged unlawful dental enterprise, the claims against Sulitzer P.C. appear plausible at this stage.

For these reasons, joinder of Sulitzer P.C. is proper under both Rule 15(a)(2) and section 1447(e). I GRANT Navarro's motion for leave to amend. Navarro may add Sulitzer P.C. as a defendant, and the FAC is accepted as the operative pleading in this case.

## II. CAFA JURISDICTION

There is no basis for remanding this case,however, because CAFA jurisdiction exists. "CAFA vests a district court with original jurisdiction over a class action where: (1) there are one-hundred or more putative class members; (2) at least one class member is a citizen of a state different from the state of any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of costs and interest." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011).

The first two CAFA requirements are easily met. First, Navarro pleaded that the putative class includes "approximately 100,000 persons in the State of California." FAC ¶ 26. Second, there is minimal diversity among the parties: Navarro is a citizen of California and defendant

Jeffrey Sulitzer, for instance, is a citizen of Washington. *Id.* ¶ 1; Defs. Opp to Remand [Dkt. 24] at 5. An individual's citizenship is determined by his domicile, or where he has established a residence and intends to remain permanently or indefinitely. *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986). SDC has provided sufficient evidence to show that Sulitzer is domiciled and intends to remain in Washington. *See* Declaration of Jeffrey Sulitzer ("Sulitzer Decl.") [Dkt. 24-1] ¶¶ 3–11 (conveying evidence of domicile in Washington and intent to remain in Washington). There is minimal diversity among the parties.

The third requirement is also satisfied. The amount in controversy is the "amount at stake in the underlying litigation." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (internal quotation marks and citation omitted). Put differently, the amount in controversy, which is "determined by the complaint operative at the time of removal . . . encompasses all relief a court may grant on [the] complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–415 (9th Cir. 2018). Where the complaint does not specify the amount of damages sought, a defendant "must prove by a preponderance of the evidence" that the $5 million amount in controversy requirement has been met. *See Ricksecker v. Ford Motor Co.*, No. 21-cv-04681-HSG, 2021 WL 6621069, at *2 (N.D. Cal. Dec. 22, 2021).

The burden to establish the amount in controversy by a preponderance of the evidence does not require the defendant to "research, state, and prove the plaintiff's claims for damages." *Donald*, 2015 WL 1774870, at *4 (internal quotation marks and citation omitted). Instead, a defendant may show that the requisite amount is in controversy "based on assuming the allegations in the complaint to be true, even where the complaint does not specify the amount of damages sought." *Id.* (internal citation omitted). SDC has done just that: it has calculated the lowest payment amount for clear-aligner treatment since the start of the putative class period on December 3, 2017, and concluded that only 5,883 customers (5.883% of the estimated class size) would need to obtain the requested relief (disgorgement of monies paid to SDC) to surpass the $5

million threshold. *See* Defs. Opp. to Remand at 6–7 (calculating that 5,883 x $ 850 = $5,000,550). Navarro does not challenge SDC's calculations with regard to the amount in controversy.

As a result, all three requirements have been met and CAFA jurisdiction exists.

A. **Exceptions To CAFA Jurisdiction**

Once CAFA jurisdiction has been established, the burden falls on the party seeking remand—here, Navarro—to show that an exception to CAFA jurisdiction applies. *Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020). Should one of the exceptions apply, a district court is *required* to remand the class action back to the originating state court. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007) ("§ 1332(d)(4) sets out two circumstances that *require* district courts to decline jurisdiction, the so-called 'local controversy' and 'home-state controversy' exceptions.") (emphasis in original).

Navarro asserts that both the local controversy exception under 28 U.S.C. § 1332(d)(4)(A) and the home state exception under 28 U.S.C. § 1332(d)(4)(B) apply to bar CAFA jurisdiction. Mot. to Remand at 3–5. The problem for Navarro is that both the local controversy and home state exceptions need at least one defendant to be a citizen of the state in which the action is filed. *See* 28 U.S.C. § 1332(d)(4)(A) (requiring that "at least 1 defendant is a defendant . . . who is a citizen of the State in which the action was originally filed"); 28 U.S.C. § 1332(d)(4)(B) (requiring that "the primary defendants . . . are citizens of the State in which the action was originally filed"). In determining whether these requirements are satisfied, "a federal district court is limited to the complaint." *Coleman v. Estes Express Lines*, 631 F.3d 1010, 1012 (9th Cir. 2011).

B. **Sulitzer P.C. Cannot Serve As The Basis For A CAFA Exception**

Because Sulitzer P.C. is unquestionably a citizen of California, *see* FAC ¶ 4, a key threshold consideration is whether Sulitzer P.C., the newly joined defendant, can serve as the basis for either of the CAFA exceptions. In general, "jurisdictional facts are assessed *at the time of removal*." *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1091 (9th Cir. 2010) (emphasis in

original). In *Benko*, the Ninth Circuit held that plaintiffs are allowed to amend complaints post-removal to clarify issues pertaining to federal jurisdiction under CAFA. *See Benko*, 789 F.3d 1111, 1117 (9th Cir. 2015) ("Where a defendant removes a case to federal court under CAFA, and the plaintiffs amend the complaint to explain the nature of the action for purposes of our jurisdictional analysis, we may consider the amended complaint to determine whether remand to the state court is appropriate."). But *Benko* was subsequently narrowed by *Broadway Grill*, which held that a plaintiff may not change the definition of the class so as to eliminate minimal diversity. *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1275 (9th Cir. 2017). *Broadway Grill* specifically noted that "*Benko* did not . . . strike a new path to permit plaintiffs to . . . add or remove defendants, or add or remove claims in such a way that would alter the essential jurisdictional analysis." *Id.* at 1279.

Since *Broadway Grill*, I have not found any case law allowing me to consider the status of a defendant who was joined after removal for CAFA jurisdictional purposes. *See, e.g.*, *Clark v. WorldMark, The Club*, No. 18-cv-01661, 2019 WL 1023887, at *7 (E.D. Cal. Mar. 4, 2019) ("As *Broadway Grill* makes abundantly clear, in amending the Complaint Plaintiffs may not alter the class composition or name additional Defendants in order to defeat federal jurisdiction."); *Gershfield v. Teamviewer US, Inc.*, No. 21-cv-00058, 2021 WL 1541610, at *2 (C.D. Cal. Apr. 20, 2021) ("As the Ninth Circuit stated in *Broadway Grill*, '*Benko* did not [ ] strike a new path to permit plaintiffs to amend their class definition, add or remove defendants, or add or remove claims in such a way that would alter the essential jurisdictional analysis.'"); *Soto v. Future Motion, Inc.*, No. 20-cv-06982-SVK, 2021 WL 1222623, at *3 (N.D. Cal. Mar. 31, 2021) ("*Benko* allowed amendments for purposes of clarifying the relationship between the parties and the effect of the class claims on particular defendants, not changes that amended [the] class definition, add or remove defendants, or add or remove claims in such a way that would alter the essential jurisdictional analysis.") (internal quotation omitted); *accord Dada v. CyberCoders, Inc.*,

No. 18-cv-01023, 2018 WL 6133673, at *3 (C.D. Cal. July 16, 2018) ("Plaintiffs still violate the holding in *Broadway* by removing ASGN as a Defendant . . . By removing ASGN, who is a citizen of Delaware, Plaintiffs ensured that the remaining parties are all from California thereby attempting to deprive the court of diversity jurisdiction under CAFA.").

I conclude that because Sulitzer P.C. was not named as a defendant prior to removal, Sulitzer P.C. cannot be included in the CAFA jurisdictional analysis. Sulitzer P.C. cannot serve as the California defendant for either the local controversy or home state exceptions.

### C. **Plaintiff Has Not Shown That SmileDirectClub, Inc. Is A Citizen of California**

Navarro argues in the alternative that SmileDirectClub, Inc.[1] is a California citizen. Reply [Dkt. 26] at 5. As an incorporated holding company, SmileDirectClub, Inc. is a citizen of its place of incorporation and principal place of business. 28 U.S.C. § 1332(c)(1); FAC at ¶ 2. The Ninth Circuit has held that a holding company's principal place of business "is the place where it has its board meetings . . . unless evidence shows that the corporation is directed from elsewhere." *3123 SMB LLC v. Horn*, 880 F.3d 461, 468 (9th Cir. 2018).

Navarro does not challenge SDC's assertion that SmileDirectClub, Inc. is incorporated in Delaware. Instead, the thrust of his argument is that "the majority of the corporation's executive and administrative functions are performed in California," and thus its "nerve center" is in California. Pl. Reply [Dkt. 26] at 5 (capitalization altered for clarity). I disagree with Navarro that "[t]here is no evidence to suggest that SDC's nerve center is not in California." *Id.* at 5. To the contrary, Sulitzer's sworn declaration explicitly stated that "SmileDirectClub, Inc.'s headquarters are in Nashville, Tennessee . . . [t]he corporation's officers direct and control the

---

[1] Many of Navarro's arguments regarding the citizenship of the defendant entities are broadly made against "SDC," which he does not define. To the extent that Navarro seeks to assert that SmileDirectClub LLC is a citizen of California, that argument lacks merit. A limited liability company takes on the citizenship of each of its members. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). SDC provided evidence to show that SmileDirectClub LLC does not have any members who are California citizens. Declaration of Tony Crawford ("Crawford Decl.") [Dkt. 19] ¶¶ 3–4.



United States District Court
Northern District of California

corporation from its Nashville headquarters, where it conducts board meetings." Sulitzer Decl. [24-1] at ¶ 12. During the hearing, when I asked Navarro's counsel to identify any information suggesting that SmileDirectClub, Inc. was a citizen of California, he pointed to a recent Ninth Circuit opinion finding that SmileDirectClub, LLC and Sulitzer P.C. had standing to bring an antitrust claim against members of the Dental Board of California. *SmileDirectClub, LLC v. Tippins*, 29 F.4th 513 (9th Cir. 2022). That opinion does not indicate that the officers of SmileDirectClub, Inc. are directing, controlling, and coordinating their activities in California. And as noted above, neither Sulitzer nor Sulitzer P.C. can serve as the jurisdictional hooks for the CAFA exceptions.

Because SDC met its burden to establish CAFA jurisdiction, it was Navarro's burden to show that an exception to CAFA jurisdiction applies. *Adams*, 958 F.3d at 1221. As Navarro did not show any of the defendants were citizens of California, neither the local controversy or home state exceptions can apply, and CAFA jurisdiction remains intact.[2] I DENY the motion to remand.

I turn now to SDC's motion to compel arbitration.

## III. SDC'S MOTION TO COMPEL ARBITRATION

SDC's motion to compel Navarro to arbitration primarily involves three disputes: (1) whether Navarro assented to the arbitration agreement, (ii) whether the arbitration agreement (in whole or in part) is valid and enforceable, and (iii) whether the arbitration agreement delegates these "gateway" questions of arbitrability, meaning that the arbitrator, not the Court, should decide these issues.

As discussed below, because I conclude that SDC failed to show sufficient evidence of

---

[2] As part of his reply brief, Navarro sought leave to conduct jurisdictional discovery into SmileDirectCompany, Inc.'s nerve center and citizenship. Pl. Reply at 6. But SDC has provided ample evidence showing that neither Jeffrey Sulitzer nor either of the SmileDirectClub entities are citizens of California. *See* Sulitzer Decl. ¶¶ 3–12; Crawford Decl. ¶¶ 3–4. Navarro has given no reason to suspect that SMC's jurisdictional evidence is incorrect. Navarro's request for jurisdictional discovery is denied.

United States District Court
Northern District of California

Navarro's assent to the arbitration agreement, I will take SDC's motion to compel arbitration under submission at this time. I will issue my ruling on this motion in due course after SDC has provided additional evidence regarding: (1) what Navarro would have seen when he allegedly assented to SDC's clickwrap agreement on April 23, 2020, and (2) the circumstances under which Navarro received and allegedly assented to the addendum to the retail installment contract, which is attached to Navarro's declaration at Dkt. 23-2.

**A. Delegability of Contract Formation Issues to Arbitrator**

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original) (internal citation omitted). Whether the court or the arbitrator decides arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation omitted).

While challenges to the validity of a contract containing an arbitration clause may be decided by the arbitrator, "challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017). This is because "arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT & T Techs. Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 648 (1986) (internal quotation omitted). In other words, "[t]he fundamental threshold question of whether there *exists* a binding contract (of which an arbitration clause is a part) cannot be delegated because it cannot be assumed that a delegation clause contained therein must be given effect." *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240,

1248 (N.D. Cal. 2019) (emphasis in original). While the court generally resolves ambiguities in arbitration agreements in favor of arbitration, it resolves ambiguities as to the delegation of arbitrability in favor of court adjudication. *See Kaplan*, 514 U.S. at 944–45.

Navarro contends that he did not assent to the arbitration agreement and thus no contract was formed. MTC Opp. [Dkt. 23] at 7–8. Because this is a challenge to "the very existence of the contract," this question cannot be delegated to the arbitrator. *Kum Tat*, 845 F.3d at 983. As a result, I begin my analysis by determining whether the parties formed a contract, which in turn, requires determining whether Navarro assented to the agreement.

B. **Mutual Manifestation of Intent**

The internet has not fundamentally changed the requirement that "mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen*, 763 F.3d at 1175; *see also Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862 (2016) (relying on *Nguyen* and describing this as a "pure question of law"). Mutual assent does not require that the consumer have actual notice of the terms of an arbitration agreement. *Nguyen*, 763 F.3d at 1177. Instead, a consumer is bound by an arbitration clause if "a reasonably prudent" Internet consumer would be put on "inquiry notice" of the terms of the agreement. *Id.*

"Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Id.* at 1175–76. Unlike a clickwrap agreement, a browsewrap agreement does not require an express manifestation of assent to the terms and conditions. *Id.* at 1176. Rather, a party gives its assent by simply using the website. *Id.* at 1176. "The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage

exists." *Id.* (internal quotation marks and citation omitted).

SDC's website uses a clickwrap agreement. According to SDC, before Navarro could finalize his registration as an SDC clear aligner candidate, Navarro was required to affirmatively check a "clickwrap checkbox" (as shown below) in which he agreed to SDC's Informed Consent, Terms & SmilePay Conditions (which include an arbitration clause). MTC at 4–5.

☐ I agree to SmileDirectClub's Informed Consent and Terms & SmilePay Conditions

SDC contends that had Navarro clicked on the "Informed Consent" hyperlink, he would have been presented with the arbitration clause. *Id.* at 5. SDC has also provided evidence based on Navarro's customer file that Navarro electronically accepted the TOS on April 23, 2020. *Id.*; *see also* Skinner Decl. ¶ 27 ("SDC's electronic records establish that Navarro affirmatively checked the box agreeing to the Informed Consent on April 23, 2020 at 9:25 p.m. Coordinated Universal Time (UTC).").

It is not clear from SDC's briefing, however, that the clickwrap agreement as portrayed by SDC in its motion to compel arbitration appears as how Navarro would have seen it when he created his account and purportedly assented to the agreement in April 2020. The Skinner Declaration, submitted by SDC in support of its motion, merely states that "customers manifest agreement by affirmatively clicking a clickwrap box like the following . . . ." Skinner Decl. ¶ 14. I cannot tell whether the appearance of SDC's clickwrap agreement has changed over time, or if the version reflected in SDC's briefing is the same as it would have been in April 2020. This is a particular concern because Navarro alleges that he has a different set of "terms and conditions" in his possession. Navarro Decl. ¶¶ 4, 6.

Because SDC failed to provide evidence showing what Navarro would have seen on April

23, 2020, at the point in which he allegedly assented to the clickwrap agreement, I find that SDC failed to meet its burden showing that Navarro assented to the TOS.

**CONCLUSION**

SDC's unopposed motion for leave to file additional briefs is GRANTED, Navarro's motion to amend is GRANTED, and Navarro's motion to remand is DENIED. By May 6, 2022, SDC is ordered to file a declaration with evidence demonstrating: (1) the design and appearance of the clickwrap agreement on April 23, 2020, the time when Navarro allegedly assented to the agreement, and (2) the circumstances under which Navarro received and allegedly assented to the addendum to the retail installment contract. Should Navarro wish to file a response to SDC's evidence, he must file a counter declaration with any supporting evidence by May 20, 2022. I will rule on the motion to compel arbitration following the submission of SDC's evidence.

**IT IS SO ORDERED.**

Dated: April 15, 2022

William H. Orrick
United States District Judge