UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD NAVARRO,<br><br>        Plaintiff,<br><br>    v.<br><br>SMILEDIRECTCLUB, INC., et al.,<br><br>        Defendants. | Case No. 22-cv-00095-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING DEFENDANTS' ADMINISTRATIVE MOTION TO STRIKE**<br><br>Re: Dkt. No. 18, Dkt. No. 53 |

Arnold Navarro, the plaintiff in this putative class action, alleges that SmileDirectClub, Inc., SmileDirectClub, LLC, Jeffrey Sulitzer, and Jeffrey Sulitzer, D.M.D., P.C. (collectively "SDC"), engage in the unauthorized practice of dentistry in violation of California law. SDC has moved to compel arbitration. I previously identified evidentiary deficiencies in SDC's motion and ordered SDC to file a declaration under oath to address these deficiencies. SDC has done so. Specifically, and in keeping with my order, it has produced sworn declarations and supporting exhibits that demonstrate the design and appearance of the clickwrap agreement on April 23, 2020, the date on which Navarro allegedly assented to the clickwrap agreement on SDC's website. Navarro denies that he assented to arbitration but he does not dispute that he enrolled on SDC's website so that he could receive SDC's services. Nor does he challenge SDC's evidence that customers are required to consent to SDC's terms and services—which include an arbitration clause—as a precondition to receiving SDC's services.

For the reasons set forth below, I **GRANT** SDC's motion to compel arbitration. SDC has met its burden to show that Navarro assented to the agreement. He has withdrawn his arguments regarding the enforceability of the arbitration clause. SDC's administrative motion to strike

Navarro's supplemental brief is **DENIED** as moot.

## FACTUAL BACKGROUND

Navarro filed a complaint in the Superior Court of the State of California for the County of Alameda alleging that SDC engages in the unauthorized practice of dentistry. First Amended Complaint ("FAC") [Dkt. 28] ¶ 1. He claims that, among other things, SDC failed to comply with consumer protection licensing requirements, negligently provided dental care, and made misleading and false representations to consumers about the scope of the dental services that SDC could lawfully provide. *Id.* ¶¶ 1, 10–12, 60–61, 74–75, 83. He has pleaded various causes of action against SDC, including negligence, breach of fiduciary duty, fraudulent inducement, violation of California's Consumer Legal Remedies Act, and violation of California's Unfair Competition Law. *Id.* ¶¶ 32–110.

SDC characterizes itself as a "teledentistry platform" that connects consumers like Navarro with orthodontic treatment. SDC's Motion to Compel Arbitration ("MTC") [Dkt. 18] at 3. It claims that its business model facilitates access to orthodontic treatment and allows consumers to straighten their teeth via clear aligners without the hassle and cost of in-person appointments. *Id.* Consumers who are interested in SDC's dental services may request a doctor-prescribed impression kit from SDC's website, visit a SDC retail location (known as a SmileShop), or visit the office of a dentist or orthodontist that participates in SDC's Partner Network. *Id.* All three options require consumers to register and create an SDC account online before they can access any of SDC's products or services. *Id.* at 4.

In April of 2020, Navarro visited SDC's website and reportedly created an online account. *Id.* at 4–5. According to SDC, as part of the account creation process and before Navarro could finalize his registration as an SDC clear aligner candidate, he was required to affirmatively check a clickwrap checkbox in which he agreed to SDC's Informed Consent, Terms & SmilePay Conditions ("TOS"). *Id.* at 4. The checkbox is not pre-checked, and the full TOS are presented as hyperlinks. *Id.* at 5. *Id.* When the hyperlinks are clicked, the consumer is taken to another screen that displays the complete text of each of the policies. *Id.* Consumers have the option to read, download, and/or print the policies. *Id.*

1    In support of its motion to compel arbitration, SDC initially provided some evidence
2    regarding the appearance of the clickwrap agreement but failed to show how the agreement would
3    have appeared to Navarro on April 23, 2020—the date on which Navarro allegedly accepted
4    SDC's TOS. *Id.*; Declaration of Justin Skinner ("Skinner Decl.") [Dkt. 20] ¶¶ 14–27. After I
5    ordered SDC to address this deficiency, it provided two declarations to establish the design and
6    appearance of the SDC clickwrap agreement on April 23, 2020. *See* Supplemental Declaration of
7    Justin Skinner ("Supp. Skinner Decl.") [Dkt. 48] ¶¶ 9, 11, 13, 15, 18–19, 21, 24–31. Specifically,
8    it submitted a supplemental declaration from Justin Skinner, SDC's Chief Information Officer,
9    that described the appearance of SDC's website during each stage of the registration process and
10   explained what Navarro would have seen as he completed the SDC account-registration process.
11   *Id.* ¶¶ 9, 11, 13, 15, 18. Skinner explained that since he started at SDC in 2019, and "based on
12   research since at least 2017," all of SDC's customers have been required to affirmatively check a
13   clickwrap box indicating that they "agree to SmileDirectClub's Informed Consent and Terms &
14   SmilePay Conditions." *Id.* ¶¶ 2, 19–20. According to Skinner's sworn declaration, the phrases
15   "Informed Consent," "Terms," and "SmilePay Conditions" have always appeared in the same
16   place during the registration process and have always been underlined and hyperlinked. *Id.* ¶¶ 20–
17   21. Skinner declared that clicking the Informed Consent hyperlink on April 23, 2020, would have
18   displayed the text of the Informed Consent agreement, which includes an arbitration clause. *Id.*
19   ¶¶ 29–31.

20   Additionally, SDC submitted a sworn declaration by Michael Meuti, SDC's counsel,
21   which described Meuti's retrieval of certain archived pages of SDC's website from January 26,
22   2020, and June 18, 2020, via the Wayback Machine. Declaration of Michael Meuti ("Meuti
23   Decl.") [Dkt. 49] ¶¶ 3–10. Meuti attached screenshots of the archived pages as exhibits to his
24   declaration. *See* Dkts. 49-1 to 49-4. These screenshots are consistent with Skinner's description
25   of the SDC registration process. *Compare* Dkts. 49-1 to 49-4 *with* Supp. Skinner Decl. ¶¶ 9–11.
26   SDC also explained that its servers, which maintain an electronic file for each customer, log the
27   customer's transactions and interactions. MTC at 5. These servers also log a customer's
28   electronic assent to the TOS. *Id.* SDC's electronic records indicate that Navarro completed his

registration and agreed to the TOS at 2:25pm on April 23, 2020.  Supp. Skinner Decl. ¶¶ 25, 27.

Although Navarro vigorously disputes that he assented to arbitration, he concedes that he "enrolled on a website" so that he could receive patient services.  *See* Declaration of Arnold Navarro ("Navarro Decl.") [Dkt. 23-2] ¶ 3; Supplemental Declaration of Arnold Navarro ("Supp. Navarro Decl.") [Dkt. 52-1] ¶ 3.  Navarro contends that the website enrollment process did not put him on notice of an arbitration policy, that no version of any rules of the American Arbitration Association were provided to him, and that no medical service provider informed him that any dispute would be subject to arbitration.  *Id.*  He does not, however, challenge SDC's allegations that he was required to affirmatively check a clickwrap checkbox on SDC's website in which he agreed to SDC's TOS before he could receive any services from SDC.  Nor does he assert that he did not check the clickwrap checkbox on SDC's website.

**PROCEDURAL BACKGROUND**

On January 6, 2022, SDC removed this case on the bases of diversity and the Class Action Fairness Act ("CAFA").  Not. of Removal [Dkt. 1] ¶¶ 6, 20.  On February 7, 2022, SDC filed its motion to compel arbitration.  On April 13, 2022, I heard oral argument regarding the motion. Dkt. No. 45.  During the oral argument, I issued a tentative ruling that SDC had not met its burden to show that Navarro had assented to the arbitration agreement and said that I would order SDC to provide more evidence on this issue.  On April 15, 2022, I did so.  *See* April 15, 2022 Order [Dkt. 46] at 2.[1]  I explained that "should Navarro wish to respond to SDC's evidence, he may file a declaration with supporting evidence by May 20, 2022," and that I would rule on SDC's motion to compel arbitration following the submission of the supplemental evidence.  *Id.*

On May 6, SDC submitted its supplemental evidence, which consisted of a supplemental declaration by Justin Skinner, a declaration by Michael Meuti, and supporting exhibits.  *See* Dkts. 48, 49.  On May 20, 2022, Navarro submitted a twenty-four page opposition brief to SDC's supplemental evidence, along with sworn declarations by Navarro and Navarro's counsel.  *See* Pl.

---

[1] I also ordered SDC to explain the circumstances under which Navarro received and allegedly assented to the Addendum to the Retail Installment Contract.  *Id.*; Dkt. 23-2.  I am satisfied with SDC's showing on this issue.  *See* Supp. Skinner Decl. ¶¶ 32–37.

United States District Court
Northern District of California

1  Supp. Br. [Dkt. 52]. SDC then filed an administrative motion to strike Navarro's supplemental
2  brief on the grounds that it exceeded the scope of what I had allowed and because it included legal
3  arguments not previously raised by the parties. Mot. to Strike [Dkt. 53] at 2. And Navarro filed
4  an opposition. Pl. Opp. to Mot. to Strike [Dkt. 54].

## LEGAL STANDARD

The parties do not dispute that the Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq.* Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks and citation omitted). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## DISCUSSION

SDC's motion to compel Navarro to arbitration initially involved three disputes: (1) whether Navarro assented to the arbitration agreement, (ii) whether the arbitration agreement (in whole or in part) is valid and enforceable, and (iii) whether the arbitration agreement delegates these "gateway" questions of arbitrability, meaning that the arbitrator, not the Court, should decide these issues. Navarro has since withdrawn all of his arguments concerning the validity and enforceability of the arbitration agreement and any delegation of arbitrability. Pl. Supp. Brief at 11 ("Plaintiff no longer challenges the delegation of other arbitrablity [*sic*] issues, nor does he seek decision on all other issues concerning the enforceability of the arbitration clause . . .").

As a result, should I find that Navarro assented to the arbitration agreement, then I must compel arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

1  2000) (explaining that a court must enforce a valid arbitration agreement that encompasses the
2  dispute at issue).

3  **I.  MUTUAL MANIFESTATION OF INTENT**

4  The internet has not fundamentally changed the requirement that "mutual manifestation of
5  assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen*,
6  763 F.3d at 1175; *see also Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862
7  (2016) (relying on *Nguyen* and describing this as a "pure question of law").  Mutual assent does
8  not require that the consumer have actual notice of the terms of an arbitration agreement.  *Nguyen*,
9  763 F.3d at 1177.  Instead, a consumer is bound by an arbitration clause if "a reasonably prudent"
10 Internet consumer would be put on "inquiry notice" of the terms of the agreement.  *Id.*

11 "Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-
12 through') agreements, in which website users are required to click on an 'I agree' box after being
13 presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a
14 website's terms and conditions of use are generally posted on the website via a hyperlink at the
15 bottom of the screen."  *Id.* at 1175–76.  Unlike a clickwrap agreement, a browsewrap agreement
16 does not require an express manifestation of assent to the terms and conditions.  *Id.* at
17 1176. Rather, a party gives its assent by simply using the website.  *Id.* at 1176.  "The defining
18 feature of browsewrap agreements is that the user can continue to use the website or its services
19 without visiting the page hosting the browsewrap agreement or even knowing that such a webpage
20 exists."  *Id.* (internal quotation marks and citation omitted).

21 SDC's website uses a clickwrap agreement.  SDC provided evidence showing that all of its
22 customers, including Navarro, were required to affirmatively check a "clickwrap checkbox" (as
23 depicted below) in which they agree to SDC's TOS as a condition of partaking in SDC's clear
24 aligner therapy process.  MTC at 4–5; Supp. Skinner Decl. ¶¶ 7–8, 19.

26  ☐ I agree to SmileDirectClub's Informed Consent and Terms &
27      SmilePay Conditions

According to Justin Skinner, SDC's Chief Information Officer, the phrases "Informed Consent," "Terms," and "SmilePay Conditions" have been underlined and hyperlinked since at least 2019, if not earlier. *Id.* ¶¶ 2, 20–21. Skinner also declared that clicking the Informed Consent hyperlink on April 23, 2020, would have displayed the text of the Informed Consent agreement, which includes an arbitration clause. *Id.* ¶¶ 29–31.

Despite Navarro's contention to the contrary, SDC has provided evidence based on Navarro's customer file that Navarro electronically accepted the TOS on April 23, 2020. Skinner Decl. ¶ 27 ("SDC's electronic records establish that Navarro affirmatively checked the box agreeing to the Informed Consent on April 23, 2020 at 9:25 p.m. Coordinated Universal Time (UTC)."); *see also* Supp. Skinner Decl. ¶¶ 25–30. The notice provided to Navarro via clickwrap agreement during the enrollment process is sufficient to establish his assent to the TOS. Courts in this District have upheld similar agreements that require a computer user to consent to terms and conditions before proceeding with an internet transaction, even where the user is not required to check a separate dialog box to indicate assent. *See, e.g.*, *Lee v. Ticketmaster LLC*, No. 18-cv-05987-VC, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd,* 817 F. App'x 393 (9th Cir. 2020) (finding "Lee was required to assent to the terms whenever he placed orders for tickets" and even though "Lee was not required to check a separate box to indicate his assent . . . Ticketmaster provided notice of the terms of use adjacent to the 'Place Order' button, included a hyperlink to the terms in a contrasting color, and informed the user that 'continuing past this page' (*i.e.,* placing an order) would indicate assent to the terms"); *Peter v. DoorDash, Inc*., 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020) (enforcing arbitration agreement where terms of service were hyperlinked on the sign-in page); *cf. Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 956 (9th Cir. 2022) ("[C]ourts have routinely found clickwrap agreements enforceable.").

In sum, SDC has provided sufficient evidence showing that Navarro assented to SDC's TOS when he clicked the "I agree" box, as required before he could complete his account. By assenting to the TOS, Navarro also assented to the arbitration provision.

## II.  NAVARRO'S EVIDENTIARY OBJECTIONS

In an effort to avoid arbitration, Navarro raises a host of evidentiary objections directed to

the Skinner Decl., Supp. Skinner Decl., and Meuti Decl. *See* Pl. Supp. Brief at 11–22. As a threshold matter, I agree with SDC that Navarro's supplemental brief exceeds the scope of my April 15, 2022, Order. I granted Navarro the option to submit "a declaration with supporting evidence" in response to SDC's supplemental evidence. April 15, 2022 Order at 2. The supplemental brief is not a declaration and was thus neither invited nor desired. By filing the supplemental brief, Navarro has overstepped the boundaries of my Order and the Local Rules. *Id.*; *see also* Civil L.R. 7-3(d) ("Once a reply is filed, no additional memoranda, papers, or letters may be filed without prior Court approval . . .").

Nevertheless, I have exercised my discretion and reviewed the thirty-two evidentiary objections that Navarro has lodged. Pl. Supp. Brief at 11–12. I conclude that these objections are not appropriate at this stage in response to this type of evidence in support of a motion to compel arbitration. A district court ruling on a motion to compel arbitration applies a standard similar to the summary judgment standard of Rule 56. *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 936 (N.D. Cal. 2019). "On a motion to compel arbitration . . . the Court 'does not focus on the admissibility of the evidence's form,' so long as the contents are capable of presentation in an admissible form at trial." *Lomeli v. Midland Funding, LLC*, No. 19-cv-01141-LHK, 2019 WL 4695279, at *7 (N.D. Cal. Sept. 26, 2019) (quoting *McKee v. Audible, Inc.*, No. 17-cv-1941, 2017 WL 7388530, at *4 (C.D. Cal. Oct. 26, 2017)); *accord Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (district court could base its grant of summary judgment in part on government employee's affidavit despite hearsay and best evidence rule objections). "Objections on the basis of a failure to comply with the technicalities of authentication requirements or the best evidence rule are, therefore, inappropriate." *McKee*, 2017 WL 7388530, at *4.

None of the evidentiary objections call into question what Justin Skinner or Michael Meuti declared with regard to the appearance of the SDC website on April 23, 2020.[2] Nor do the

---

[2] For instance, Navarro's first objection to the Supp. Skinner Decl. is "lack of sworn statement." Pl. Supp. Brief at 12. Navarro objects that the declaration includes an e-signature, and that it does not include a city and state as part of the affiant's signature block. *Id.* at 13. But the Supp. Skinner Decl. includes an attestation by Meuti, as required by our Local Rules. *See* Dkt. 48-6; L.R. 5-1(h)(1). On the record at hand, there is no reason to think that the Supp. Skinner Decl. is unreliable because of a typed signature.

objections call into question that Navarro assented to the TOS as part of his registration for SDC's services, and that the TOS contains an arbitration clause.  Navarro's evidentiary objections are **OVERRULED.**

## CONCLUSION

For the foregoing reasons, SDC's motion to compel arbitration is **GRANTED** and its administrative motion to strike Navarro's supplemental brief is **DENIED** as moot.  This proceeding is **STAYED** pending resolution of the arbitration.  *See* 9 U.S.C. § 3.

The parties shall submit a joint case management statement six months from the date of this Order and every six months thereafter until this matter is resolved.  They shall notify the court within 14 days of the resolution of the arbitration, indicating whether the case should be dismissed or will proceed; if the latter, the parties should contact Ms. Davis, my Courtroom Deputy, to request a case management conference.

Dated: June 1, 2022



William H. Orrick
United States District Judge